## CLARK *v.* REYNOLDS.

1. Where a solicitor-general applied for a mandamus against a county treasurer, to command the payment of certain insolvent costs, which he claimed the right to have paid under several local acts on the subject, and the presiding judge granted the mandamus, but, in connection with his judgment, filed a written opinion in which he stated that he thought the earlier acts were repealed by the later ones, and that he had doubts as to the constitutionality of the latter, but would resolve them in fa-

vor of the acts, and the respondent excepted to the grant of the manda-
mus; if the judgment was correct, it will not be reversed, although the
reasoning expressed in the opinion may not have been sound.

2. The act of 1873 (Acts 1873, p. 226) in regard to the payment of insol-
vent costs to the solicitor-general of the Augusta circuit from the county
treasury, upon recommendation of the grand jury, was not invalid as
being in conflict with the clause of the constitution of 1868 which de-
clared that "protection of person and property is the paramount duty
of government, and shall be impartial and complete;" nor did it conflict
with the fourteenth amendment to the constitution of the United
States, which declares that no State shall deny to any person within its
jurisdiction the equal protection of the laws.

3. Such a local law, enacted prior to the adoption of the constitution of
1877, was not unconstitutional because it made the operation of its pro-
visions dependent upon the recommendation of a majority of the grand
jury; nor on the ground that it conferred on the judicial department
of the government a power properly belonging to the legislative de-
partment.

4. Where an act of the legislature provided for the repeal of an earlier
act, to take effect at a certain time, and before the arrival of such time
the repealing act was itself repealed, the original act stood as if no re-
pealing legislation had been passed.

5. If an act, which contains a general clause repealing all other acts in-
consistent with it, is itself unconstitutional and void, it does not operate
to repeal any other act.

6. The act of 1873, referred to in the second headnote above, was not re-
pealed by the constitution of 1877, but was preserved by the clause of
that instrument which declared that "local and private acts passed for
the benefit of counties, cities, towns, corporations, and private persons,
not inconsistent with the supreme law, nor with this constitution, and
which have not expired nor been repealed, shall have the force of statute
law, subject to judicial decision as to their validity when passed, and
to any limitations imposed by their own terms."

7. Nor was such act repealed because the constitution of 1877 limited the
purposes for which counties might levy taxes, one of such purposes
being for "expenses of court," and the act mentioned having, before the
adoption of the constitution (as could then be done), made the in-
solvent costs of the solicitor-general a part of the expenses of court in
the Augusta circuit, when properly recommended.

8. The local act of 1893 (Acts 1893, p. 485), and the act amending it in
1894 (Acts 1894, p. 93), making provision for the payment of the in-
solvent costs of the solicitor-general of the Augusta circuit semi-an-
nually, upon recommendation by the grand jury, and upon approval by
the presiding judge of an itemized bill thereof, were in conflict with the
provision of the constitution of 1877 which declares that "no special
law shall be enacted in any case for which provision has been made by
an existing general law."

9. Under the act of 1873 a recommendation by the grand jury that the
insolvent costs of the solicitor-general, accruing at a certain term,
should be paid, followed by an auditing and approval of the itemized

account of such costs by the presiding judge and an order for their payment, was sufficient to require the county treasurer to pay such accounts upon proper presentation thereof, although the grand jury may not have examined and audited the itemized account.

10. Under the act of 1873, after the grand jury had failed to include in their presentments a recommendation as to insolvent costs, the signing of a paper, by the individuals who had been members of that body, recommending payment of the insolvent costs of the term, did not constitute an official recommendation by the grand jury. But where the grand jury omitted to include in their presentments a recommendation of payment of insolvent costs of the solicitor-general, but all the members signed a paper so recommending, and at the next term of court the grand jury of that term recommended that the insolvent costs of the preceding term be paid, as well as those of the current term, this was sufficient to authorize such payment.

11. Where affirmative action by a grand jury was required by a statute as a condition of payment of certain costs from a county treasury, its absence can not be waived by county commissioners, so as to make such account thus payable.

SEPTEMBER 22, 1911.

Mandamus. Before Judge Walker. Richmond superior court. June 6, 1911.

On February 15, 1873, an act was approved which read as follows: "Be it enacted by the General Assembly of the State of Georgia, that whenever at any term of the superior court of any county of the Augusta judicial circuit a majority of the grand jury shall so recommend, the judge of the superior court shall grant to the solicitor-general an order upon the county treasurer for the payment of any account for insolvent criminal costs, so recommended to be paid; and it shall be the duty of the county treasurer of said county to pay the same out of any money in the treasury thereof; provided, nothing in this act shall be deemed or considered mandatory to the grand jury; but they shall have full discretion to recommend or not, as they see proper, the payment of said criminal and insolvent costs." Then follows the repealing clause. Acts 1873, p. 225. In 1879 an act was passed which declared that so much of the act of 1873 as applied to the county of Richmond "be and the same is hereby repealed: provided, said repeal shall not take effect until the expiration of the term of office of the present incumbent." It contained also the usual clause repealing all laws and parts of laws in conflict with the act. Acts 1878-79, p. 405. On December 6, 1880, before the expiration of the term of the then incumbent in the office of solicitor-general, an-

other act was approved, which repealed the act of 1879. Acts 1880-81, p. 650. In 1893 an act was passed, which was approved December 20, the title of which was as follows: "An act to limit and regulate the payment of insolvent costs of the solicitor-general of the Augusta circuit, for services in Richmond superior court, out of the treasury of Richmond county, and for other purposes." Acts 1893, p. 485. It made no reference to the preceding acts, but declared generally that the treasurer of Richmond county should pay to the solicitor-general of the Augusta circuit, semi-annually, his bill of insolvent costs for services in Richmond superior court, upon presentation of an itemized bill thereof, audited and approved by the presiding judge; "provided, the same shall not exceed, in any one year, the sum of two thousand dollars." It also declared that all laws and parts of laws "in conflict with this act be and the same are hereby repealed." In 1894 an act was passed, approved December 15, amending the act of 1893 by adding to the first section thereof the words, "provided further that the grand jury at each term of the superior court of Richmond county shall authorize and recommend the payment of the same in their presentments." It also contained a general repealing clause. Acts 1894, p. 93.

The solicitor-general demanded of the treasurer payment of certain bills for insolvent costs aggregating $5,197.50, and accruing at several terms of the superior court as follows, September term, 1909, $1,110.25, November term, 1909, $1,041, January term, 1910, $350.50, March term, 1910, $839.25, May term, 1910, $471.25, September term, 1910, $1,225.25, November term, 1910, $160. The county treasurer refused to pay these amounts, and the solicitor-general applied for a writ of mandamus to compel him to do so. In his petition he set out all of the acts above mentioned. The respondent attacked the validity of the act of 1873, and also contended that it had been repealed. He attacked the acts of 1893 and 1894 as unconstitutional. He further set up. that, if such acts were valid, there had not been a compliance with them so as to entitle the applicant to the writ of mandamus. By consent the case was submitted to the presiding judge upon the pleadings and an agreed statement of facts, of which only the following portion need be set out: At no term of the court did the solicitor-general present to · the grand jury of that term

itemized bills of costs for services rendered, and upon which he claimed a right to collect insolvent costs. The method adopted by him, and which has always been that practiced in the circuit, so far as known, was that at each term of the court the grand jury included in its presentments a recommendation to the effect that the insolvent costs of the solicitor-general and the other officers should be paid, when audited and approved by the presiding judge. Thereupon the bills of costs were made up and presented to the judge, and by him there was entered an order upon such bills stating: "Audited, approved, and ordered paid." Such an itemized bill, in accordance with the recommendation of the grand jury, and approved as stated for the September term, 1909, amounting to an aggregate of $1,110.25, was presented to the treasurer for payment, which was demanded and refused. The treasurer notified the solicitor-general at the time that he had been instructed by the board of commissioners of roads and revenues not to pay that or any other like bills until further notice. This position was confirmed by a letter from the chairman of the board of commissioners to the solicitor-general, to the effect that no further bills for insolvent costs would be paid until there had been a final determination in the matter. Negotiations continued, looking to the settlement of the question of insolvent costs of the solicitor-general for each succeeding term. The itemized bills were audited and approved by the judge of the court, but were not actually presented for payment, otherwise than by a written demand covering each of the aggregate amounts for the respective terms, and the demand was refused. For the September term, 1909, the grand.jury omitted to include in its presentments the recommendation of the payment of such insolvent costs, but all of the members of the grand jury signed a writing recommending that such costs be paid. At the November term, 1909, of the court the grand jury recommended that the costs for the September term, 1909, and the November term, 1909, be paid. At the May term, 1910, there was no grand jury to make a recommendation, "but, by agreement between the solicitor-general and the board of commissioners of roads and revenues of Richmond county, such recommendation was waived by the said board."

The presiding judge granted a mandamus absolute, commanding the county treasurer, on presentation of the bills set out in the

petition, to pay them out of any money he might have in the treasury subject to expenses of court. The treasurer excepted.

*Salem Dutcher* and *William K. Miller,* for plaintiff in error.

*W. H. Barrett* and *E. H. Callaway,* contra.

LUMPKIN, J. (After stating the foregoing facts.) The answer of the respondent raised many points. They may be grouped under a few general heads. (1) Was the act of 1873 violative of the constitution of 1868, which was in force at the time of its passage, or of the fourteenth amendment to the constitution of the United States? (2) Was it repealed by subsequent legislative acts? (3) Was it repealed by the constitution of 1877? (4) Were the acts of 1893 and 1894 unconstitutional? (5) If the acts mentioned, or any of them, were valid and of force, was there such a compliance with their terms as to authorize the grant of a mandamus, requiring the county treasurer to pay the insolvent costs involved?

1. In granting the mandamus absolute, the presiding judge filed a brief opinion, in which he said that he thought the acts of 1873, 1879, and 1880 were, by implication, repealed by the acts of 1893 and 1894; that he had doubt as to the constitutionality of those acts, but resolved the doubt in their favor, and granted the writ. It was argued on behalf of the plaintiff in error that this was an adjudication that the acts preceding that of 1893 had been repealed, and that the only questions which should be considered arose under that act and the act of 1894. We do not think this contention is sound. If we should determine that the acts of 1893 and 1894 were invalid, of course they could not repeal, by implication, preceding acts. The judgment which was rendered was that a mandamus absolute be granted. The views and doubts expressed by the judge would not require a reversal, if the writ was properly granted.

2. Was the act of 1873 in conflict with the provision of the State constitution of 1868 (which was in force when the act was passed), which declared that "protection of person and property is the paramount duty of government and shall be impartial and complete" (Code 1873, § 4493), or with the fourteenth amendment to the constitution of the United States, which provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws"? The contention on this subject was

based on the ground that the solicitor-general was a State official, and should be paid by the State; that the general legislative plan for compensating the solicitor-general for his services was by the payment of a small salary from the State treasury (about enough, it was said, to pay his expenses), and the balance from State funds arising from fines and forfeitures; that the act of 1873, which made special provision in regard to the Augusta judicial circuit, imposed the burden of paying the insolvent costs of the solicitor-general upon the counties in such circuit, and necessitated the levying of a tax in Richmond county for the purpose of replenishing the county treasury with funds wherewith to pay such costs; and that this amounted to a denial of the equal protection of the laws. This contention is without merit. The constitution of 1868 did not prevent the passage of local laws because of the existence of general laws on a particular subject. The fact that there were and had been general laws as to the payment of insolvent costs from funds arising from fines and forfeitures did not prevent the legislature from adopting an act supplementing such fund in a particular county. In this there was no denial of the equal protection of the law. Certainly there was none as against the county treasurer. *Hammond* v. *Clark*, 136 *Ga.* 313 (71 S. E. 479).

3. It was urged, that, under the constitution of 1868, taxation for State purposes was imposed by the General Assembly, and for county purposes by county authorities, and that this act created a necessity for taxation and a liability dependent upon recommendation of the grand jury. It was also urged that the act conferred upon the judicial department of the government a power properly belonging to the legislative department. Neither of these objections to the act is well taken. Where the legislature had power to enact the local law, making it take effect or become operative upon such a condition did not violate the provisions of the constitution of 1868, to which reference has been made. Moreover, the present proceeding is not one to compel the levy of a tax. The money is already in the hands of the treasurer; but he declines to pay the insolvent cost bills of the solicitor-general, on the ground that they are not lawful demands.

4. Was the act of 1873 repealed by the act of 1879? The act of 1879 provided for its repeal, but not to take effect until the end of the term of the then incumbent in office. Before that time ar-

rived the act of 1880 repealed the act of 1879.    It was therefore held by this court that the act of 1873 was not repealed by the act of 1879, but remained of force.    *Adam* v. *Wright,* 84 *Ga.* 720.    These acts and counter-acts do not present a case of legal execution and resuscitation, but of intercepted death.

5.    Was the act of 1873 repealed by the acts of 1893 and 1894? Those acts each contained a general clause repealing "all laws and parts of laws in conflict with this act."    If they were themselves valid, they so covered the same subject-matter as that dealt with in the act of 1873 as to repeal it.    If they were themselves unconstitutional and void, they did not repeal it:    Nothing can properly be said to conflict with a nullity; and a repeal of what conflicts with a nullity is no repeal at all.    We shall presently show that the two later acts were unconstitutional.    Hence they did not repeal the former act.    *Barker* v: *State,* 118 *Ga.* 35 (44 S. E. 874).

6.    The contention that the act of 1873 was repealed by the constitution of 1877, because not in accord with it, can not stand. It was expressly provided by that constitution (art. 12, sec. 1, par. 4) that "Local and private acts passed for the benefit of counties, cities, towns, corporations, and private persons, not inconsistent with the supreme law, nor with this constitution, and which have not expired nor been repealed, shall have the force of statute law, subject to judicial decision as to their validity when passed, and to any limitations imposed by their own terms."    Civil Code (1910), § 6605.    No such inconsistency between that act and the constitution has been pointed out as, under the adjudications of this court, works a repeal of the former.    If all prior local acts thus preserved became at once inconsistent with the constitution because they were not altogether like the general laws existing, or those passed under such constitution, the preservation would be nugatory.    There may be such an inconsistency, or such an exhibition of constitutional or legislative intent, that the prior local law will be repealed.    But such is not the case here.    The enforcement of the law in Richmond county, and the services of the solicitor-general for that purpose, are beneficial.    That the local law of 1873 made provision in regard to the compensation of that officer, and that the treasury of the county would have to be supplied with funds from taxation, did not exclude that act from the

constitutional classification of local acts "passed for the benefit of counties." The distinction between local acts passed prior to the constitution of 1877, and by it preserved unless inconsistent with that instrument, and local or private acts passed since the adoption of that constitution, in cases covered by general laws, must be borne in mind.

7. By article 7, section 6, paragraph 2, of the constitution (Civil Code, 1910, § 6562) it is declared that the legislature shall not have power to delegate to any county the right to levy a tax except for certain purposes. One of these is for "expenses of courts." In 1889, an act was passed requiring the commissioners of roads and revenues of Fulton county to levy a tax to pay a certain proportion of the insolvent costs not collected by the two plaintiffs, while solicitors of the city court of Atlanta, from fines and forfeitures. In *Adair* v. *Ellis,* 83 *Ga.* 464 (10 S. E. 117), it was held that this claim was not for "expenses of court" within the meaning of the constitutional provision mentioned, and the act was void. Justice Simmons, in the opinion, said: "It may be argued, however, that the legislature has the power to determine and define, under this paragraph, what are expenses of courts, and that the courts would be bound by its definition. This may or may not be true. It is unnecessary for us to determine in this case whether the legislature can enlarge the common and usual meaning of these words or not. It is sufficient for us to say that in this case the legislature did not say that the claims of the defendants in error were expenses of court." In *Adam* v. *Wright,* 84 *Ga.* 720 (11 S. E. 893), it was held that the act of 1873, now under consideration, was not so modified by the constitutional provision just mentioned as to forbid payment of insolvent costs out of any funds in the county treasury raised by taxation, such costs having, before the adoption of the constitution of 1877, been made part of the expenses of court in the Augusta circuit, when properly recommended, as could then be done. See also *Massey* v. *Bowles,* 99 *Ga.* 216 (25 S. E. 270) ; *Moore* v. *Houston County,* 128 *Ga.* 187 (57 S. E. 236) ; *Duer* v. *Thweatt,* 39 *Ga.* 578; *Adam* v *Cohen,* 84 *Ga.* 725 (11 S. E. 895). In *Houston County* v. *Kersh & Wynne,* 82 *Ga.* 252 (10 S. E. 199), it was held that in the absence of a statute providing for the publication of the general presentments of the grand jury as a part of the proceedings of the court, there was no

authority of law for paying out of the public funds for such a publication. Subsequently an act was passed providing for such publication and the payment thereof as a part of the expenses of court. See *Howard* v. *Early County,* 104 *Ga.* 672 (30 S. E. 880). It has not been held that the legislature can exercise the judicial function of construing a clause of the constitution, but it seems to have been recognized that they may require certain things to be done and certain legitimate expenses to be incurred. In those cases, however, the question arose in regard to the taxing power of counties.

8. The act of 1893 provided that "the treasurer of Richmond county shall pay to the solicitor-general of the Augusta circuit, semi-annually, his bill of insolvent costs for services in Richmond superior court, upon presentation of itemized bill for same, audited and approved by the presiding judge; provided, the sum paid shall not exceed, in any one year, the sum of two thousand dollars." Acts 1893, p. 485. This was amended by the act of 1894 by adding: "Provided further, that the grand jury, at each term of the superior court of Richmond county, shall authorize and recommend the payment of the same in their presentments." Acts 1894, p. 93. Both of these acts were attacked on the ground, among others, that they were in conflict with the provision of the constitution which declares that "no special law shall be enacted in any case for which provision has been made by an existing general law." Article 1, section 4, paragraph 1 (Civil Code (1910), § 6391). This ground of attack is well taken. In *Moore* v. *Houston County,* supra, it was said (referring to a local act fixing the compensation of the treasurer of Houston county, passed prior to the constitution of 1877): "While special legislation of the character of the act of 1875 is no longer permissible since the constitution of 1877 went into effect, still a previous valid special law was not repealed by the adoption of that constitution." The act of 1873 was not repealed, as already stated. It was subject to repeal; but new and additional local legislation could not be enacted after the passage of the constitution of 1877, where provision had been made on the subject by an existing general law. *Houston County* v. *Killen,* 76 *Ga.* 826. When the two later acts mentioned were passed there was a general law in existence on the subject of the salary and fees of the solicitors-general, and their

payment from the fine and forfeiture funds. Penal Code (1910), §§ 1112, 1130. The legislature could not then provide by local act for the payment of insolvent costs to the solicitor-general of the Augusta circuit from the county treasury of Richmond county.

It was argued in the brief of counsel for defendant in error, that the constitution prohibited "special" legislation; that this differed from local legislation; that the difference had not been regarded by this court in former decisions; and that it should now be held that the constitution of 1877 did not prevent local legislation from being enacted, although there might be in existence a general law covering the subject. To give the constitution such a construction would be to permit the evil at which this provision was largely aimed,—the passing of a law to govern the whole State, and then allowing every militia district, county, judicial circuit, or other division of the State, or the officers thereof, to obtain special legislative dispensations on the same subject, so that, while the law purported to operate throughout the State, a great part of the State's territory might be exempt from the mandate, and a State law might practically cease to be a State law. The constitution not only prohibits a special law in any case for which a provision has been made by an existing general law, but in the same connection declares that "laws of a general nature shall have uniform operation throughout the State," and also provides for the preservation of local laws already passed and not inconsistent with that instrument; thus showing that the word "special" was not used in the restricted sense contended for by counsel for defendant in error. In *Mathis* v. *Jones*, 84 *Ga.* 804 (11 S. E. 1018), the subject was fully considered. It was there said: "You can not make a general statute cease to be general otherwise than by another statute repealing it. That is, under the constitution of 1877, you can not repeal a general law in part by a local law; for in the eye of the constitution, every local law is special relatively to a general law. . . They [general statutes] can not be deprived of their force in one part of the State without simultaneously depriving them of force in every other part. They can be killed but not mutilated: the smallest of their territorial members can not be cut off." Such has been the uniform construction of this court, and it was reaffirmed as late as *Futrell* v. *George*, 135 *Ga.* 265 (69 S. E. 182). We think it a correct interpretation of the constitution, and we de-

cline to depart from it. · There is no question here of amending or modifying a general law by another general law, or of legitimate classification which may make a law general in character. Nor is an act in regard to a city court involved.

9.   It was contended that, if the act of 1873 remained in force, there had been no sufficient compliance with its terms to authorize the solicitor-general to demand payment of his insolvent cost bills. It was urged that the act required an itemized account of the insolvent costs of the term, of which payment was sought, to be presented to the grand jury and passed upon by that body, before presentation to the judge.   The act declared that "Whenever at any term   .   .   a majority of the grand jury shall so recommend, the judge shall grant an order for the payment of any account for insolvent criminal costs, so recommended to be paid."   It then provided that nothing in the act should be deemed mandatory to the grand jury; but they should have full discretion "to recommend or not, as they see proper, the payment of said criminal. and insolvent costs."   It is not entirely clear whether it was intended that the grand jury should investigate the items of the cost bill, or whether they could recommend in general terms the payment of the insolvent costs.   The discretionary power of recommending or not does not apply merely to an auditing of an itemized account. It seems rather to confer a discretionary authority to determine whether the insolvent costs of the solicitor-general shall be paid from the county treasury.   This construction also comports with the opening words of the act, that whenever at any term of the superior court a majority of the grand jury "shall so recommend," etc.   The possible uncertainty arises from the repetition of the words "so recommended to be paid," and the question whether those words qualify the words "any account," so as to require an itemized account to be presented and recommended.   It is a matter of common knowledge that the most active work of the solicitor-general in prosecuting cases does not begin until after the grand jury have brought in indictments or presentments, and that a large part of his services on account of which insolvent costs may arise is rendered after the grand jury have acted.   By the act organizing the Augusta circuit in 1870 it was provided that the regular terms of Richmond superior court should continue for four weeks, though an adjourned term should be called, if necessary.   If the grand

jury should finish their. labors during the first week, and the criminal docket be called during the second or third week, under the construction of the act contended for they could not be discharged, but would be compelled to return at the close of the term to pass upon the itemized accounts of the solicitor-general, or else they could take no action in the matter. The fees allowed that officer are fixed by statute. Under the general law then in force, the presiding. judge examined the accounts of officers claiming insolvent costs, and ordered them to be entered on the minutes, to be paid in the manner prescribed by law. Penal Code (1910), § 1113. The act of 1873 provided for the payment of the insolvent costs of the solicitor-general from the county treasury when "so recommended" by the grand jury at any term. We think the more reasonable construction of the act is that the grand jury could approve the policy, and the judge could approve the items. According to the agreed statement of facts, this has been the uniform practice in the Augusta circuit ever since the adoption of the act of 1873. For about thirty-six years the grand juries, solicitors-general, judges, and county officials acted upon such construction before any controversy arose. It is true that long practice can not make legal that which is illegal. But it can hardly be assumed that all of the officers during this long time intentionally violated the law; and we can not say that they actually violated it in this respect.

10, 11. The facts contained in the agreed statement show a sufficient compliance with the act of 1873 to authorize the payment of each of the bills of insolvent costs of the solicitor-general, except in one instance. It appears that at the May term, 1910, there was no grand jury to make a recommendation, "but, by agreement between the solicitor-general and the board of commissioners of roads and revenues of Richmond county, such recommendation was waived by the said board." The law required affirmative action on the part of the grand jury, in order to authorize the payment of those costs. The board of commissioners of roads and revenues could not waive what the law required as a sine qua non. Their waiver could not make that due which, under the law, was not due. It was accordingly erroneous to grant the mandamus absolute as to the bill of insolvent costs of the solicitor-general for

the term mentioned. Direction is given that the judgment be amended accordingly.

What is said above covers the substantial controversy. There were some other contentions, such as that the act of 1873 contained matter in its body which was not covered by its title, that the proviso was inconsistent with the act, etc. It is sufficient to say that, except as above stated, there was no error in granting the writ of mandamus absolute. Nothing herein said conflicts with the decision in *Clark* v. *Hammond*, 134 *Ga.* 792 (68 S. E. 600).

*Judgment affirmed, with direction. Beck, J., absent. The other Justices concur.*