S91A1113. LOMAX et al. v. LEE et al.
S91A1114. CITY OF ATLANTA v. LEE et al.
S91A1115. THORPE et al. v. LEE et al.
(408 SE2d 788)

CLARKE, Chief Justice.

In April 1991, following the first county-wide reassessment of real property in Fulton County in 20 years, a group of taxpayers brought this class action suit for declaratory, injunctive and other equitable relief against Fulton County, the Fulton County Board of Commissioners, the City of Atlanta and the Joint City/County Board of Tax

Assessors (Joint Board). The taxpayers alleged that the 1952 statute that created the Joint Board is invalid as applied to Fulton County. Following a hearing, the trial court granted the taxpayers' motion for summary judgment. The trial court held that the statute in question, Ga. L. 1952, p. 2825, as amended, is invalid on five independent grounds. The court then reasoned that because the Joint Board is a nullity, the 1991 reassessments are void.[1] The trial court enjoined the appellants from attempting to collect any taxes based on the 1991 reassessments. Appellants assert that the trial court erred in each of its holdings. On review, we conclude that the Joint Board is legally established, but that the procedure for contesting the assessments of the Joint Board was enacted without constitutional authority. We therefore reverse in part and affirm in part.

In 1949 the General Assembly enacted legislation creating a "Local Government Commission in Atlanta and Fulton County," to "study the problems of local governments therein." Ga. L. 1949, pp. 921, 922. In January 1950, the Commission published its report and recommendations, entitled "Plan of Improvement." The Commission recommended that the tax lists and digests for Fulton County and the City of Atlanta be consolidated, and that the county and city adopt uniform assessing standards and procedures. "Plan of Improvement," p. 61. Also in 1950 the General Assembly enacted legislation extending the existence of the Commission until July 1, 1951, and authorizing the Commission to "supervise the drafting of specific constitutional amendments or bills necessary and proper to effectuate its . . . plan. . . ." Ga. L. 1950, pp. 2646, 2648, §§ XIV and XV.

In 1952 the General Assembly proposed an amendment to the Georgia Constitution which provided in pertinent part,

"The General Assembly of Georgia shall have the power by general, local or special law applicable to all counties having therein the greater part of a city with a population of 300,000 or more, according to the United States census of 1950 or any future United States census, and to said city including any portions which lie in one or more counties, without regard to the uniformity provisions otherwise contained in this article, section, and paragraph of this Constitution, to:

"(a) Provide for the establishment of a board of tax assessors. . . .

"(b) Authorize said board to assess all taxable property in

---

[1] However, the trial court did not determine the validity of the methods used in arriving at the 1991 reassessments.

the county and in the city for taxation. . . .

"(c) Create a board of tax appeals and equalization, by whatever name designated . . . and establish procedures for appeals from assessments made by the board of tax assessors and for the equalization of said assessments which procedures shall be in lieu of any rights of arbitration or appeal heretofore existing in the county or in the city. . . ." Ga. L. 1952, pp. 591-594.

The Amendment provided that the authority conferred on the General Assembly would be retroactive to January 1, 1952. At the same term the General Assembly enacted Ga. L. 1952, p. 2825 to implement the Amendment. The implementing legislation was made subject to the ratification of the Amendment.

The constitutional amendment was ratified by the voters on November 4, 1952, and passed by separate vote counts statewide and in Fulton County. The 1952 Amendment thus became part of the 1945 Georgia Constitution.

1. The threshold issue in this case is whether the 1952 Amendment survived the adoption of the 1976 Georgia Constitution. It is undisputed that under Art. XIII, Sec. I, Par. II of the 1976 Constitution, the 1952 Amendment was continued as part of the 1976 Constitution only if it is a local amendment to the 1945 Constitution.[2]

The trial court found that the 1952 Amendment directly affected the whole state as any county could potentially come within the population parameters. Therefore the trial court reasoned that the 1952 Amendment is a general amendment which was not continued by the 1976 Constitution. We do not agree.

The 1952 Amendment was proposed and ratified in 1952 as part of the Plan of Improvement for Fulton County and the City of Atlanta. It is undisputed that only these subdivisions of the State were affected by the Amendment because only Fulton County and the City of Atlanta fit the population requirements. The inescapable conclusion is that the framers of the 1952 Amendment intended that it apply only to Fulton County and the City of Atlanta.

It has been held that "an act which is limited in its classification and otherwise hedged about by restrictions so that it can apply to only one county at the time of its passage is a special, and not a gen-

---

[2] The only portion of this Constitutional provision which applied to the 1952 Amendment states, "Amendments to the Constitution of 1945 which did not directly affect the whole State and which were required to be ratified in a particular subdivision or subdivisions as well as in the State as a whole, which are in force and effect on the effective date of this Constitution shall continue in force and effect as part of this Constitution."

eral, act." *Tift v. Bush*, 209 Ga. 769, 771 (75 SE2d 805) (1953). Likewise, a constitutional amendment which is so restricted that it applies to only one county and one city at the time of adoption is a local and not general constitutional amendment. To hold otherwise merely establishes a fiction serving no reasonable purpose.[3] We hold, therefore, that Ga. L. 1952, pp. 591-594, was a local amendment to the 1945 Constitution, and became a part of the 1976 Constitution pursuant to Art. XIII, Sec. I, Par. II.[4]

2. The trial court found that even if the 1952 Amendment survived the adoption of the 1976 Constitution, it did not survive the adoption of the 1983 Constitution because the notice of intention to continue the Amendment was fatally defective.

Article XI, Sec. I, Par. IV of the 1983 Constitution provides that constitutional amendments to the 1976 Constitution would be repealed unless "specially continued in force and effect . . . by a local law enacted prior to July 1, 1987." During its 1986 Session the General Assembly enacted Ga. L. 1986, p. 4456 to continue in effect the 1952 Amendment. The notice of intent to introduce this legislation provided that this Act would

> continue in force and effect as a part of the Constitution of Georgia that constitutional amendment (Ga. L. 1952, p. 591) which relates to the authorization for the General Assembly by local act to provide a joint city-county board of tax assessors and a board of tax appeals and equalization and to levy taxes in support of such services.

The trial court determined that this notice was fatally defective under Art. III, Sec. V, Par. IX of the 1983 Constitution, which states that the General Assembly must provide by law for the advertisement of notice of intention to introduce local bills,[5] and *Brown v. Clower*, 225 Ga. 165 (166 SE2d 363) (1969), because it failed to identify either the county or city affected by the constitutional amendment.

However, this constitutionally mandated notice provision " 'does not require more information as to the law to be enacted than would be required in the caption of the bill itself.' " 225 Ga. at 166. The Constitution does not require specificity in the notice, but demands

---

[3] For a criticism of the practice of amending the Georgia Constitution by amendments which apply to an isolated political subdivision, see *Sims v. Town of Baldwin*, 249 Ga. 293 (1) (290 SE2d 433) (1982).

[4] We point out that in *Boynton v. Lenox Square*, 232 Ga. 456, 458 (207 SE2d 446) (1974), this court took the position that the 1952 Amendment is a local constitutional amendment, although the issue here was not before the court at that time.

[5] OCGA § 28-1-14 sets out the criteria for notice to be given prior to the introduction of a local bill.

only that it be sufficient to inform the public that "legislation affecting a particular subject will be introduced." *Cain v. Lumpkin County*, 229 Ga. 274, 275 (190 SE2d 910) (1972). The purpose of this notice requirement is to " ' "protect the people against covert or surprise legislation." ' " *Brown*, supra at 166. We hold the notice of intention to introduce legislation continuing the 1952 Amendment was sufficient notwithstanding the fact that it did not specifically refer to either Fulton County or the City of Atlanta.

We have held in Division 1 that the 1952 Amendment applied only to Fulton County and the City of Atlanta. At all times subsequent to the adoption of this Amendment and at the time the notice of intention was published, the Amendment applied only to Fulton County and the City of Atlanta. There could not have been any possibility of "covert or surprise legislation" in the bill to continue the 1952 Amendment. The published notice was sufficient to alert persons of ordinary intelligence as to the subject matter of the constitutional amendment being continued, and therefore passes constitutional scrutiny under Art. III, Sec. V, Par. IX.

3. The trial court next decided that amendments to the 1952 Statute which establish arbitration as the method of appeal from the assessment of the Joint Board are void.[6] We agree that the 1952 Amendment did not authorize the legislature to enact a local act to establish arbitration as the method of contesting a real estate assessment.

In Division 1 we held the 1952 Constitutional Amendment was preserved in the 1976 and 1983 constitutions because of the Amendment's local character. However, the legislature may not, without constitutional authority, enact a local act regarding any matter "for which provision has been made by an existing general law. . . ." Article III, Sec. VI, Par. IV of the Georgia Constitution of 1983; see also *City of Atlanta v. Hudgins*, 193 Ga. 618 (19 SE2d 508) (1942) (under the Georgia Constitution, the subject matter of an existing general law is put beyond the reach of special laws.) Public policy favors uniformity of law through the state. Further, public policy dictates close scrutiny of the validity of local acts, because local acts, by their very nature, contribute to the lack of uniformity. In drafting non-uniform local acts, the legislature is limited by the authority given to it in the enabling constitutional amendment.

This 1952 Constitutional Amendment constitutes an enabling provision authorizing, but not creating, a joint board of tax assessors. It also authorizes the legislature to "create a joint board of tax ap-

---

[6] The trial court decided that amendments set forth at Ga. L. 1953, p. 2792; Ga. L. 1956, p. 3361; Ga. L. 1957, p. 2924; Ga. L. 1958, p. 3390, and Ga. L. 1974, p. 3607 are unconstitutional.

peals and equalization . . . and establish procedures for appeals from assessments made by the board of tax assessors and for the equalization of said assessments which procedures shall be in lieu of any rights of arbitration or appeal heretofore existing in the county or in the city." The Amendment did not *require* the legislature to create a board of tax appeals, Ga. L. 1952, p. 591, § 1 (e). Rather, it says if there is to be a departure from the general law in the manner of appeals from the Board of Tax Assessors, that departure must be by the creation of such a board. This means the General Assembly has a choice for the affected counties and cities. It may choose to create a board of appeals and equalization, or it may do nothing and let the general law control.

When the constitutional amendment was ratified in 1952, the general law specified arbitration as the method for contesting tax assessments. 1933 Code of Georgia § 92-6912.[7] But in 1972 the General Assembly changed that and mandated boards of equalization by general law. This effectively narrowed the choice for the legislature because that which the local constitutional amendment allowed and which the general law prescribed became virtually the same. Neither allows for an arbitration system.

We hold that Ga. L. 1953, p. 2792; Ga. L. 1957, p. 2924; Ga. L. 1958, p. 3390, and Ga. L. 1974, p. 3607, which purport to establish arbitration by local act as the method of appeal from the assessments of the Joint City/County Board of Assessors are beyond the scope of the authority given to the legislature in the 1952 Amendment.[8] The 1952 Amendment does not give the legislature the authority to provide by local act for any procedure to contest a real estate assessment other than by a board of appeals and equalization, however named. Even during the period between 1952 and 1972, when the local acts incorporated or closely followed the general law, these statutes were unconstitutional. They attempted, without constitutional authority,

---

[7] When the 1952 Amendment was passed, the general law provided an arbitration procedure to contest real estate assessments. Pursuant to the authority granted in the Amendment, the legislature enacted a local act creating an appeals procedure that varied from the general law, an appeal to a Board of Tax Appeals and Equalization. Ga. L. 1952, p. 2825. In 1953, however, the legislature abolished the Board of Tax Appeals and reverted to arbitration of assessments made by the Joint City/County Board. Ga. L. 1953, p. 2792. In 1958 the local act was amended to adopt by reference the general law relating to arbitration of tax disputes, § 92-6912 of the Georgia Code of 1933. Then in 1972, the legislature changed the general law, repealing Code § 92-6912 and enacting a new procedure for contesting real estate assessments.

[8] *Boynton v. Lenox Square*, 232 Ga. 456 (207 SE2d 446) (1974), correctly decided that a law which incorporates another law by reference does not change every time that the incorporated statute is amended. The case also correctly determined that the arbitration procedure in place did not deny the taxpayers due process. The issue of the constitutional authority to continue arbitration as a non-uniform method of contesting real estate assessments was not raised or reached in that case.

to control by local act a matter for which provision had been made by the general law. Similarly, the amendment found at Ga. L. 1956, p. 3361, which attempts to establish by local act a direct appeal to the Joint Board is not within the specific authority of the 1952 Amendment and is unconstitutional. As unconstitutional acts, these amendments are void and have no effect on the earlier act they purport to amend. *Studstill v. Gary*, 216 Ga. 268 (116 SE2d 213) (1960); *Clark v. Reynolds*, 136 Ga. 817 (72 SE 254) (1911). The last act establishing an appeals procedure that was within the authority granted in the 1952 Amendment was the 1952 Statute.

4. Appellants next assert that the trial court erred in holding that the 1952 Statute was repealed by or rendered inapplicable by "population amendments" that were enacted in 1971 and 1981. For the reasons similar to those expressed in Division 3, we conclude that the "population amendments" are unconstitutional and therefore without any effect.

The 1952 Amendment gives the General Assembly the power to provide for the establishment of a board of tax assessors in "all *counties* having therein a greater part of a *city with a population of 300,000* or more. . . ." (Emphasis supplied.) The legislation enacted Ga. L. 1952, p. 2825 et seq. to implement this Amendment, defining a "county" as any county having within its borders a "city or municipality with a population of 300,000 or more. . . ." In 1971 the legislature amended the "population figures" of the 1952 Act to "be applicable only in *counties* having a population of 600,000 or more. . . ." Ga. L. 1971, pp. 3390-3391. In 1981 the General Assembly again amended the 1952 Act to provide that it would be applicable "in *counties* having a population of 550,000 or more. . . ." Ga. L. 1981, p. 3283.

When the constitution grants the legislature specific authority to implement local acts regarding a certain matter, the legislature must adhere closely to the limitations of that authority. The 1952 Act was faithful to the limitations of the 1952 Amendment. The 1971 and 1981 Acts vary from those limitations. The 1952 Constitutional Amendment is specific in defining the population category for counties to which the Amendment applies. The enabling Constitutional provision authorizes legislation for counties in which there lies a *city* having a population of more than 300,000 persons. The 1971 and 1981 Acts are silent as to this limitation, but deal with *counties* having a population of more than 600,000 or 550,000 respectively. The 1971 and 1981 Acts simply do not treat a matter within the scope of the authority of the 1952 Amendment. These amendments to the 1952 Statute are therefore unconstitutional and void. *Clark*, supra. They do not alter the constitutionally enacted 1952 Statute.

5. The trial court also decided that the 1952 Amendment was not properly ratified, relying on *King v. Peagler*, 227 Ga. 29 (178 SE2d

897) (1970), for the proposition that the vote must be calculated separately for the city and the county affected. We conclude that *King* carries no such requirement. Rather, it held that the votes of city residents must be included in the total vote tally for the county. We find nothing in the record to establish that the 1952 Amendment was not properly ratified.

6. We further conclude that the trial court erred in holding that the 1952 Statute and all its amendments are unconstitutional on the ground that they contain subject matters which are different from that expressed in their titles. We find no significant deviation from the caption which would render the acts unconstitutional on this ground.

In sum, we conclude that the 1952 Amendment was carried forward in the present constitution and that neither the 1952 Amendment nor the 1952 Statute are unconstitutional for any of the reasons assigned. However, the amendments which attempt to establish by local act any appeal system other than that specified in the 1952 Amendment and the amendments that attempt to change the population category affected by the Amendment are unconstitutional and void. The issue of the appropriate remedy for taxpayers who have no constitutionally established process in place to contest their real estate assessments is not before this court. We therefore remand this action for further proceedings consistent with this opinion.

*Judgment affirmed in part, reversed in part and remanded. All the Justices concur, except Benham, J., who dissents.*

BENHAM, Justice, dissenting.

I respectfully dissent from Division 3 of the majority opinion wherein the majority concludes that the 1953, 1957, 1958, and 1974 amendments to the 1952 legislation establishing a joint city-county board of tax assessors are unconstitutional because they provide for a procedure to contest a real estate assessment other than by a board of tax appeals and equalization. This conclusion is based upon a narrow, restrictive reading of that portion of the 1952 constitutional amendment authorizing the establishment of appellate review of tax assessments. The majority determines that the amendment requires an *exclusive* method of appeal, and that method involves a Board of Tax Appeals and Equalization for Atlanta and Fulton County. I respectfully disagree, concluding that the legislature was not restricted in its creation of a method by which the residents of Atlanta and Fulton County might appeal from the assessments made by the joint city-county board of tax assessors.

The 1952 amendment empowered the General Assembly to

[c]reate a board of tax appeals and equalization, by whatever

name designated, . . . and establish procedures for appeals from assessments made by the board of tax assessors . . . which procedures shall be in lieu of any rights of arbitration or appeal heretofore existing in the county or in the city.

The amendment also declared that

the General Assembly is empowered, but not directed, to exercise such authority by one law pertaining to all or any one or more of said functions. . . .

The constitutional amendment did not require the creation of a Board of Tax Appeals and Equalization for Atlanta and Fulton County for several reasons. First, the use of the term "board of tax appeals and equalization" did not, in 1952, carry with it the meaning it has today because there was no such entity as a board of tax appeals and equalization in Georgia in 1952. Thus, reference to a board of tax appeals and equalization encompassed any procedure "by whatever name designated" by which tax assessments could be appealed and equalized. Arbitration is such a procedure.

Second, even if the phrase as used in the 1952 constitutional amendment is construed to describe the entity which has evolved over the past 39 years into what we know today as a board of tax appeals and equalization, the constitutional amendment did not *require* the creation of such a board of tax appeals and equalization. The amendment permitted the legislature to choose which constitutionally-authorized powers it wished to exercise. Thus, the General Assembly was entitled to refrain from exercising its authority to create a board of tax appeals and equalization for Atlanta and Fulton County, and to pass legislation establishing a procedure for appeals from assessments. The legislature's sanctioning of arbitration as the method of assessment appeal is an exercise of the discretion given the legislature by the 1952 constitutional amendment.

Because I believe the majority has construed the constitutional amendment too narrowly and imposed requirements where the exercise of legislative discretion was authorized, I must respectfully dissent.

DECIDED OCTOBER 2, 1991.

*Thomas L. Murphy,* for appellants (case no. S91A1113).
*Michael V. Coleman, Joe M. Harris, Sarah I. Miles,* for appellant (case no. S91A1114).
*W. Roy Mays III,* for appellants (case no. S91A1115).

*Robert J. Proctor, D. John Skandalakis,* for appellees.