S92A0973, S92X0984. CITY OF ATLANTA v. NORTH BY NORTHWEST CIVIC ASSOCIATION, INC. et al.; and vice versa. S92A0974, S92X0982. JOINT CITY-COUNTY BOARD OF TAX ASSESSORS OF ATLANTA AND FULTON COUNTY et al. v. NORTH BY NORTHWEST CIVIC ASSOCIATION, INC. et al.; and vice versa. S92A0986. NORTH BY NORTHWEST CIVIC ASSOCIATION, INC. v. COLE-LAYER-TRUMBLE COMPANY et al. S92A0988. NORTH BY NORTHWEST CIVIC ASSOCIATION, INC. v. JOINT CITY-COUNTY BOARD OF TAX ASSESSORS OF ATLANTA & FULTON COUNTY et al. (422 SE2d 651)

SEARS-COLLINS, Justice.

These appeals, stemming from an action brought by the North by Northwest Civic Association (the "civic association"), concern whether Fulton County ("the county") acted ultra vires in entering into a contract with the Cole-Layer-Trumble Company ("CLT") for

---

the mass reappraisal of property in the county and the City of Atlanta ("the city") and whether the reappraisal system violated due process and equal protection. The trial court granted summary judgment to the civic association. In doing so, it held that the county did not act ultra vires in entering into the contract with CLT, but that the mass reappraisal was unconstitutional in several respects. For the reasons that follow, we affirm the trial court's ruling that the county did not act ultra vires, but reverse the court's ruling, on summary judgment, that the mass reappraisal was unconstitutional. We thus reverse the grant of summary judgment to the civic association, and affirm the cross-appeals and direct appeals of the civic association.

Pursuant to Ga. L. 1952, p. 2825 et seq., the city and county created the Joint City-County Board of Tax Assessors of the City of Atlanta and Fulton County (the "board of tax assessors"). On February 15, 1989, the city and the county entered into an agreement providing that they desired to reappraise property throughout the city and county; that the county would hire a qualified appraisal company to conduct the reappraisal; and that the city and county would each pay a certain percentage of the costs of the reappraisal. On that same date, the county entered into a contract with CLT, providing that CLT would conduct a reappraisal of all property in the city and county. The county entered the contract under the authority of OCGA § 48-5-298 (a), which provides, among other things, that a county may hire private individuals to assist in appraising property in the county.

CLT began working on the reappraisals in 1989 and finished in 1991.

On October 9, 1991, the civic association filed an action for declaratory judgment and injunctive relief against the board of tax assessors, the county, the city, and CLT. The civic association is a nonprofit corporation, whose membership consists of 722 families that own homes in the county. The civic association alleged that the board of tax assessors had mailed out notices of tax assessment pursuant to the reappraisals conducted by CLT, and that the valuations were excessive and did not represent the fair market value of the individual properties. The civic association further alleged that, for several reasons, the contract that the county had made with CLT was ultra vires and that the methods used by CLT in reappraising the property violated due process and equal protection. The civic association also alleged that CLT had not adequately performed its duties under the contract; that to allow CLT to retain money paid to it would unjustly enrich CLT; and that for these reasons CLT should be required to return the money paid to it for the reappraisal. For the foregoing reasons, the civic association requested that the trial court declare the reappraisals by CLT void, enjoin the use of those reappraisals, and

award attorney fees to the civic association.

The civic association moved for summary judgment and the city, county, and board of tax assessors filed cross-motions for summary judgment. CLT filed a motion to dismiss on the ground that the civic association lacked standing to bring any claim against CLT for the alleged breach of its contract with the county. On December 11, 1991, the trial court held a hearing on the motion and cross-motions for summary judgment and on the motion to dismiss.

On December 20, 1991, the trial court entered an order disposing of all issues but attorney fees. The court granted summary judgment to the civic association[1] and denied the cross-motions for summary judgment of the city and county. The court also dismissed CLT as a party. In granting and denying these motions, the court ruled that the civic association had standing to contest the method, procedure, and constitutionality of the mass reappraisal; that the civic association did not have standing to sue a private contractor for breach of contract or for a refund of money; and that the county had not acted ultra vires in entering the contract with CLT. Concerning the mass reappraisal methods of CLT, the court held that they were sound and legal except for three exceptions, which caused the mass reappraisal to violate due process and equal protection.

First, the court found a due process violation. This violation, the court found, stemmed from a prior decision of this Court in litigation that arose after the same mass reappraisal by CLT. *Lomax v. Lee*, 261 Ga. 575, 579-581 (3) (408 SE2d 788) (1991). In *Lomax*, decided on October 2, 1991, this Court held that the mechanism for appeals from assessments by the board of tax assessors was unconstitutional. Id. at 579-581. In the present case, the court found that the mass reappraisal by CLT violated due process because of the lack of an appeal process to correct individual errors made by CLT. The court ordered that, until the General Assembly created an appeal procedure, the board of tax assessors, the city, and the county were restrained from use of the mass reappraisals. The court further ruled that once the appeal procedure became law all taxpayers would have 30 days in which to appeal their reappraisal.

Second, the court found that, as to residential property only, the mass reappraisal created artificial and inaccurate neighborhoods,

---

[1] The court did not specifically state that it granted the motion for summary judgment of the civic association, but that is the inescapable conclusion from the record. The December 11 hearing was a hearing on the motion and cross-motions for summary judgment, and the trial court, in ruling in favor of the civic association concerning its claims against the city and county, did specifically deny summary judgment to the city and county. Moreover, in its December 20 order, the court stated that it was ruling on the motions for summary judgment. Consistent with the foregoing, the civic association acknowledges that the court granted summary judgment to it.

which led to unequal valuation. To remedy this problem, the court ordered the board of tax assessors to create four panels of real estate brokers for each tax zone created by CLT and to have those panels review, and adjust or redraw if necessary, the neighborhoods within those tax zones. The court further specified that, if the panels adjusted a neighborhood, then any residential parcel moved in or out of the neighborhood would have to be reappraised. Moreover, the court ordered that, if more than a fourth of the residential parcels in a neighborhood were adjusted, then all the residences in the readjusted neighborhood would have to be reappraised.

Third, the court ruled that the mass reappraisal arbitrarily and capriciously affected residential parcels in excess of two acres of land. In doing so, the court focused on only the land in such lots that exceeded the two acres that immediately surrounded the taxpayer's residence ("the excess land"). The court based its finding of unconstitutionality on two grounds. First, the court relied on its finding that the reappraisal set the square footage price of "the excess land" at the same price as developed lots of two acres or less. The court found this unreasonable because, it said, developed lots of less than two acres have street frontage and utilities in place, whereas "the excess land" did not. Second, the court relied on its finding that CLT failed, in appraising the value of "the excess land," to consider topography, engineering requirements, zoning, flood plain and wetlands restrictions, utility easements, and other governmental restrictions. The court ruled that these shortcomings meant the reappraisal of residential lots over two acres violated due process and equal protection. The court permanently enjoined the use of the reappraisal of "the excess land." The court ordered "the excess land" to be individually reevaluated using traditional appraisal methods and procedures.

The court subsequently entered an order ruling that no basis existed for an award of attorney fees to the civic association.

The parties have filed various appeals and cross-appeals from the trial court's orders. In Case No. S92A0973, the city raises issues concerning the trial court's holding that the mass reappraisal by CLT was unconstitutional. In Case No. S92A0974, the board of tax assessors and the county (hereinafter the board and the county will be referred to as the county) raise the same issues presented by the city's appeal in Case No. S92A0973.

In its cross-appeals in Case Nos. S92X0982 and S92X0984 and in its direct appeal in Case No. S92A0986, the civic association contends that the trial court erred by holding that the civic association did not have standing to sue CLT for a return of the money paid to it by the city and county, and that the trial court erred by holding that the county's contract with CLT was not ultra vires. In its direct appeal in Case No. S92A0988, the civic association contends the trial court

erred by holding that no basis existed for awarding attorney fees to the civic association.

After the parties filed their notices of appeal to this Court, but before the record was docketed here, the General Assembly enacted a procedure for appeals from assessments by the board of tax assessors. Ga. L. 1992, pp. 1676-1677 (effective April 15, 1992). Moreover, on October 16, 1992, we held that the provisions of Ga. L. 1992, pp. 1676-1677, provide a complete appeal remedy for taxpayers. *City of Atlanta v. Lee*, 262 Ga. 461 (421 SE2d 705) (1992).

### Case Nos. S92A0973 & S92A0974

1. In these cases the city and the county contend that the recent enactment of an appeal process for taxpayers moots the trial court's ruling that the mass reappraisal violated due process because of the lack of an appeal process; that the taxpayer's right to pursue an appeal of their appraisals precluded the trial court from exercising its equitable jurisdiction to inquire into the constitutionality of the methodology used by CLT; and that, in any event, the trial court erred in ruling that CLT's creation of 800 neighborhoods and its appraisal of lots in excess of two acres violated due process and equal protection. We agree with all these contentions.

2. We first address the contention of the city and the county that the trial court's ruling that, without an appeal process to determine if any reappraisals were erroneous, the reappraisals violated due process. The city and county contend that the appeal process enacted by the General Assembly on April 15, 1992, moots the trial court's ruling that the mass reappraisal violated due process because of the lack of an appeal process to correct errors on individual properties. The civic association does not oppose this contention by the city and county, and we agree with it, since taxpayers may now appeal from assessments based on the reappraisals.

3. The city and county also contend that the trial court should not have exercised its equitable jurisdiction to inquire into the constitutionality of CLT's appraisal methods. The city and county contend that the constitutional attacks had to be made in appeals from assessments, as such appeals provide an adequate remedy at law and thus prohibit the exercise of a court's equitable jurisdiction. We agree.

In numerous cases we have held that a superior court should not exercise its equitable jurisdiction in tax assessment cases to address issues concerning valuation, taxability, uniformity, and constitutionality, including the constitutionality of appraisal methods. *Wilkes v. Redding*, 242 Ga. 78, 79 (247 SE2d 872) (1978); *Barr v. Jackson County*, 238 Ga. 332 (232 SE2d 923) (1977); *Tax Assessors v. Chitwood*, 235 Ga. 147, 153-154 (218 SE2d 759) (1975); *Chilivis v.*

*Backus*, 236 Ga. 88, 90 (222 SE2d 371) (1976). We have held that a taxpayer may raise such issues in a statutory appeal, and that such appeals constitute an adequate remedy at law, precluding the court's exercise of its equitable powers. *Wilkes*, supra, 242 Ga. at 79. These cases establish that as a matter of policy and judicial economy ad valorem tax disputes should be resolved first at the local level through the appeal procedures created specifically for that purpose. In this case, although the statutory appeal procedures were not in place at the time of the hearing, we conclude that the trial court's ruling that taxpayers would have 30 days after the new appeal procedure was enacted to exercise their right to appeal, ensured that that appeal procedure would be an adequate remedy at law once enacted. Accordingly, the court should not have exercised its equitable jurisdiction to determine constitutional questions regarding the method of reappraisal.

4. The city and county further contend that, even assuming the trial court should have addressed the constitutionality of the appraisal methods, the trial court erred in granting summary judgment to the civic association on the ground that CLT's creation of neighborhoods violated due process and equal protection. We agree.

At the outset, we note that the trial court granted summary judgment to the civic association. The trial court could have, in an equitable case such as this, foregone consideration of the motion and cross-motions for summary judgment, and could have, instead, conducted a non-jury trial in which it resolved all factual issues as the trier of fact. See *Colquitt County Hosp. Auth. v. Health Star, Inc.*, 262 Ga. 285, 286, fn. 1 (417 SE2d 147) (1992). However, the court did not do so. Moreover, the fact that the trial court made findings of fact and conclusions of law does not change the standard of review on appeal of summary judgments. *Harrell v. Louis Smith Mem. Hosp.*, 197 Ga. App. 189 (1) (397 SE2d 746) (1990); Wright, Miller & Kane, Federal Practice & Procedure: Civil § 2716 (2d ed. 1983).[2] For these reasons, we therefore must review the record to determine if the trial court properly granted summary judgment to the civic association.

> To succeed on a motion for summary judgment, the movant must show that there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). In ruling on a motion for summary judgment, a trial court is not empowered to resolve disputed issues of material fact but merely to determine if such issues exist for resolution. [Cits.] "[I]f genuine issues of fact do exist, summary judgment must be denied in a proceeding for

---

[2] In this regard, although it can be helpful for a trial court on summary judgment to specify its findings of undisputed facts, the trial court should not resolve factual disputes.

equitable relief." 10A C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure: Civil § 2731 (2d ed. 1983). [*Colquitt County Hosp. Auth.*, supra, 262 Ga. at 285-286].

Moreover, "[a]ny doubt as to the existence of substantial issues of fact is resolved against the movant. The party opposing the motion is to be given the benefit of all reasonable doubt and all favorable inferences that may be derived from the evidence produced." *Kelly v. Vargo*, 261 Ga. 422, 423 (405 SE2d 36) (1991).

In this case, the trial court based its conclusion that CLT's method of creating neighborhoods violated due process and equal protection on its findings that CLT created "artificial 'neighborhoods'" that "did not reflect real or existing neighborhoods or had boundaries that included contiguous areas that in actuality fell into other neighborhoods." However, not only do we conclude that these findings of fact about CLT's creation of neighborhoods are disputed, we find no evidence in the record to support them.

First, there is no evidence in the record as to what 800 neighborhoods were created, and thus there is no support for the finding that the neighborhoods created by CLT had boundaries that included areas that *"in actuality"* fell into other neighborhoods. Moreover, the record contains no evidence of any instance in which a neighborhood created by CLT did not actually match a "real" or "existing" neighborhood. We must conclude, then, that there is no evidence to support a finding that the actual neighborhoods created by CLT in fact did not "reflect" "real" or "existing" neighborhoods.

The trial court's order, however, could be read as based, first, on a finding that CLT created neighborhoods without regard to what was actually reflected on the ground in any given part of the city or county, and as based, second, on the reasoning that this method of creating neighborhoods would inevitably lead to neighborhoods that did not reflect real or existing neighborhoods (without regard to whether the method had actually done so). However, we find no support in the record for a finding that CLT created neighborhoods without regard for what was actually reflected on the ground in the city and county. In this regard, the chairman of the board of tax assessors, testified that in creating neighborhoods the object was to identify those properties that were "continuous" and were subject to the same physical and economic influences.

Further, the manager for CLT that was in charge of this project testified that CLT first divided the city and county into four major zones, and then subdivided those areas into neighborhoods that

reflected what was on the ground such as similar housing characteristics, similar price range, age groups, quality ranges

and the result that it would be a reasonable statistical measuring base for comparison of sales. We also compared our results to other studies that have been done by other departments such as the Fulton County Planning Department, City of Atlanta Planning, and . . . [the board of tax assessors]. . . . We also employed a consultant . . . whose principal was the former head of the real estate board of the State of Georgia to look over both our results and compare them to previous results and supply his own knowledge to this.

Based on this evidence and on the absence of any evidence to the contrary, we must conclude the record does not support a finding that CLT's method of creating neighborhoods would inevitably lead to neighborhoods that did not "reflect real or existing neighborhoods."

For the foregoing reasons, we reverse the grant of summary judgment to the extent it was based on the conclusion that CLT's creation of neighborhoods violated due process and equal protection.

5. We next address the city's and county's contention that the trial court erred by granting summary judgment to the civic association on the ground that the reappraisal of property in excess of two acres violated equal protection and due process. We agree with this contention as well.

As we have previously noted, the trial court based this ruling on two findings of fact. The first was that the reappraisal set the square footage price of "the excess land" at the same price as developed lots of two acres or less. The second was that in appraising "the excess land" CLT did not consider factors such as topography, the lack of utilities and street frontage, and zoning, floodplain and easement restrictions.

Without citing the evidence in detail, we conclude that there was, at a minimum, a genuine dispute as to each one of the foregoing facts,[3] and that the trial court erred in resolving the disputed facts and in granting summary judgment to the civic association on the ground the appraisal of land in excess of two acres violated due process and equal protection.

---

[3] In this regard, we find no evidence that CLT set the square footage price of "the excess land" at the same price as developed lots of two acres or less.

As for CLT's failure to consider factors such as topography and flood plain restrictions, numerous property owners filed affidavits stating that they thought their assessments were in excess of fair market value because part of their property was in a floodplain. These property owners, however, did not state if they knew whether or not CLT had considered this fact in setting the fair market value of their property. Moreover, although one of the project managers for CLT stated that he personally was unfamiliar with certain floodplain documents, he also stated that the appropriate appraisers might have had knowledge of the documents and that in any event, the appraisers did consider topography, zoning, utility and floodplain restrictions, and other such factors in determining the value of land for each parcel.

6. In its cross-appeals and in its direct appeal in Case No. S92A0986, the civic association contends that, for several reasons, the contract between the county and CLT was ultra vires and illegal; that the trial court erred in holding otherwise; and that therefore we should affirm the trial court's grant of injunctive relief. In the cross-appeals and the direct appeal in Case No. S92A0986, the civic association also contends that the trial court erred by holding that it did not have standing to sue CLT for the return of the money paid to it by the city and county. In Case No. S92A0988, the civic association contends that, if we hold that the civic association has standing to sue for the return of the money paid to CLT, then the trial court erred by holding that there was no basis for awarding attorney fees to the civic association.

7. We first address the civic association's contention that the contract between the county and CLT was an ultra vires act. In this regard, we note that the trial court properly exercised its equitable jurisdiction to address these issues, as a taxpayer has standing to seek to enjoin the ultra vires acts of a governing authority. See *Newsome v. City of Union Point*, 249 Ga. 434 (291 SE2d 712) (1982).

(a) For the act of a local government to be considered ultra vires, it must be beyond the "power or authority of the [local government] to perform under any circumstances." Id. at 436. " '[T]here is a distinction between the doing by a corporation of an act beyond the scope of the powers granted to it by law, and an irregularity in the exercise of the granted powers.' " Id. at 437 (quoting *Ga. Granite R. Co. v. Miller*, 144 Ga. 665 (2a) (87 SE 897) (1915)). An irregularity in the exercise of a granted power does not render the act in question ultra vires. *Newsome*, supra, 249 Ga. at 437.

(b) Although the civic association notes that OCGA § 48-5-298 (a) authorized Fulton County to enter the contract with CLT, it appears to argue that the contract was ultra vires on the ground the legislature cannot constitutionally authorize a county to delegate one of its duties to a private individual. We conclude, however, that the civic association has not met its burden to show that § 48-5-298 (a) is unconstitutional. In this regard, the civic association has not either clearly designated the provision of the 1983 Georgia Constitution that it contends has been violated or shown in what respects the statute, or some part of it, violates that constitutional provision. *Wallin v. State*, 248 Ga. 29, 30 (1) (279 SE2d 687) (1981); *Chester v. State*, 262 Ga. 85, 88 (3) (414 SE2d 477) (1992). This contention therefore offers no ground for affirming the trial court.

(c) The civic association also argues that the contract was an ultra vires act because the minutes of the meeting at which the county

approved the contract with CLT were not signed. We do not find that this omission renders the contract ultra vires. First, in the absence of any showing that § 48-5-298 (a) is unconstitutional, we must hold that the county had the legislative authority to enter the contract in question. Thus, the fact that the county may have committed a procedural irregularity in entering the contract does not render the contract ultra vires. *Newsome*, supra, 249 Ga. at 436-437. Moreover, because the contract was unanimously approved by the Fulton County Board of Commissioners, because the minutes of the meeting at which the contract was approved were ratified by the Fulton County Board of Commissioners at their next meeting, and because the contract was signed and placed on the minutes, the contract was validly entered. See OCGA § 36-10-1; *Hatcher v. Hancock County Commrs.*, 239 Ga. 229, 230 (2) (236 SE2d 577) (1977) (contracts with county must be in writing and entered on the minutes).

(d) The civic association also contends that the contract with CLT was ultra vires because CLT was not authorized to do business in Georgia when it entered the contract. This contention, however, is contradicted by the record, which shows that CLT was authorized to do business in Georgia.

(e) The civic association also contends that CLT did not comply with the minority participation provision of its contract, and the civic association apparently contends that this alleged failure renders the contract ultra vires. We find no merit to this contention. First, the record does not support the civic association's assertion that CLT did not comply with the minority participation requirement. Moreover, even if CLT did not comply with this contractual provision, it would not support a holding that the county acted ultra vires in entering the contract. *Newsome*, 249 Ga. at 436-437. Finally, to the extent this contention can be read as an attempt by the civic association to bring a breach of contract claim against CLT, we hold that the civic association does not have standing to assert such a claim. *Backus v. Chilivis*, 236 Ga. 500, 501-503 (224 SE2d 370) (1976).

8. We now turn to the civic association's contention that the trial court erred by ruling that it did not have standing to sue CLT for the return of money paid to it. This issue is controlled adversely to the civic association by *Backus v. Chilivis*, in which we held that "any suit to recover money . . . of a breached contract must be brought by the county itself. Citizens and taxpayers do not have standing to bring such a suit." Id. at 501. The trial court therefore properly ruled that the civic association did not have standing to sue CLT for a return of money paid to it by the county.

9. For the foregoing reasons we affirm the cross-appeals in Case Nos. S92X0982 and S92X0984 and the direct appeal in Case No. S92A0986.

10. We now turn to Case No. S92A0988, in which the civic association contends the trial court erred in ruling that there was no basis for awarding attorney fees to the civic association. However, because, as the civic association has acknowledged, this contention was dependent upon the success of its contention that it could sue CLT for the return of money paid to it by the county, and because we have resolved that issue adversely to the civic association, we hold the trial court did not err in ruling that no basis exists for awarding attorney fees to the civic association. Accordingly, we affirm Case No. S92A0988.

*Case Nos. S92A0973 & S92A0974. Judgment reversed. Clarke, C. J., Bell, P. J., Hunt, Fletcher and Benham, JJ., concur.*

*Case Nos. S92X0982 & S92X0984. Judgment affirmed. Clarke, C. J., Bell, P. J., Hunt, Fletcher and Benham, JJ., concur.*

*Case Nos. S92A0986 & S92A0988. Judgment affirmed. Clarke, C. J., Bell, P. J., Hunt, Fletcher and Benham, JJ., concur.*

DECIDED NOVEMBER 16, 1992.

*Moreton Rolleston, Jr.,* for North By Northwest Civic Assn., Inc.

*Michael V. Coleman, Joe M. Harris, Mary J. Huber,* for City of Atlanta.

*Thomas L. Murphy,* for Joint City-County Board of Tax Assessors of Atlanta & Fulton County.

*Robert M. Travis, C. Scott Greene, Charles J. Gernazian,* for Cole-Layer-Trumble Co.