26357.   CITY OF DORAVILLE v.
SOUTHERN RAILWAY COMPANY et al.

ARGUED MARCH 9, 1971—DECIDED APRIL 22, 1971.

*Gerstein & Carter, Joe W. Gerstein,* for appellant.

*Jones, Bird & Howell, Earle B. May, Jr., Greene, Buckley, DeRieux & Jones, John D. Jones,* for appellees.

ALMAND, Chief Justice. The appeal here is from an order dismissing a petition seeking injunctive relief. It appears that the parties in the court treated the motion as one for a judgment upon the pleadings and documentary exhibits thereto, which is permissible under the Civil Practice Act, *Code Ann.* § 81A-112.

The material allegations in the petition, as well as the allegations in the answer and motion to dismiss of the defendant were as follows:

The City of Doraville, a municipal corporation, filed its complaint in Superior Court of DeKalb County seeking to enjoin the Southern Railway Company and the Atlanta & Charlotte Airline Railway Company, from constructing a proposed switching yard facility within the corporate limits of the City of Doraville. It was

alleged that the proposed switching yard would be located in the highly populated, well-developed, residential and commercial areas in the City of Doraville; that large petroleum products storage areas were immediately adjacent to the proposed switching yard, as well as great numbers of residences and retail shopping center developments; that the area was heavily traversed by motor vehicles and that said yard would block two local crossings for great periods of time making it difficult for personal and vehicular traffic, thereby creating fire and traffic hazards. It was alleged that the Georgia Public Service Commission had approved the tract of the property for the construction of a switching yard and that portions of the property had been acquired by purchase and in condemnation proceedings.

The prayers of the original petition were that defendants be temporarily and permanently enjoined from the erection of the proposed switching yard facilities.

Subsequently, the plaintiff filed an amendment setting forth certain charter provisions of the city relating to the authority of the city to regulate the running of railroad trains through the city and the authority to make rules for the peace, good order, health, welfare and proper government of the city. Attached to the amendment were copies of four ordinances which were alleged to have been approved by the city commission after the filing of the original complaint. Ordinance No. 1 related to the prevention of pollution of streams and waters and from oil, chemical and liquid spills from creating a safety hazard in terms of pollution and fire control. Ordinance No. 2 was designed to prevent the building of switching yards and switching of trains along the main line of the defendants' railroad. The third ordinance amended the comprehensive zoning order to prohibit switching yards in light industrial and heavy industrial districts; and, the fourth ordinance prohibited the switching of cars across grade crossings within 1,200 feet thereof, and within 400 feet of any ground petroleum products storage tank. It was alleged that the proposed switching yards came within the prohibition of the second, third and fourth ordinances.

The defendants, in their answer and motion to dismiss, alleged that the defendants are common carriers by railroad subject to the United States Interstate Commerce Act and are engaged in inter-

state commerce, and that the line of defendants' railroad in the City of Doraville is a part of the main line of the Southern Railway Company between Atlanta, Ga., and Washington, D. C. Defendants further alleged that in the course of operation they have constructed and for many years operated, tracks, terminals, and a switching yard facility within the corporate limits of the City of Doraville for the purpose of performing a switching operation necessary to the swift and efficient transportation of interstate shipments originating at or consigned to more than 130 industries located in and adjacent to the City of Doraville. Defendants further alleged that in an effort to expand the present facility located in and adjacent to the city and to construct a new facility and storage yard in the city, they made application on July 9, 1969, to the Georgia Public Service Commission, seeking authority under *Code Ann.* § 94-321, to institute condemnation proceedings against several named parties for the purpose of acquiring title owned by such parties in DeKalb and Gwinnett Counties, said properties to be used in the construction of the new yard facilities. That after notice by the Georgia Public Service Commission as to all property owners, as well as easement and permit holders, a hearing was had before the Commission. After hearing evidence by the applicants and protestants, on January 29, 1970, the City of Doraville requested in writing an opportunity to be heard on the defendants' application to obtain authority to proceed with the condemnation of said property. The city's request was granted and a hearing was had. The City of Doraville presented evidence in support of its contention that the proposed yard would adversely affect an already over-burdened traffic problem and constitute an additional fire hazard in view of the location of certain gasoline storage facilities.

By order dated May 29, 1970, the Public Service Commission pursuant to the powers granted to it under *Code Ann.* § 94-321, found that : "the existing railroad yard facilities of the applicants in the Chamblee-Doraville area are inadequate to serve the needs of the railroad users of service in that area and that new facilities must be provided to furnish the needed services both for existing industry and those known to be moving into the area as well as

for anticipated future development. The yard proposed is in a location practical for serving the industries contemplated and there is no doubt that the taking of the property for the yard will be for such a public use as is contemplated by the statute"; and further found that the taking of the property for the use intended was "... necessary and essential for the purpose of construction of the proposed yard and that such construction is required for the safe and essential conduct of the applicants' business as a public carrier and for public purposes."

The City of Doraville did not file an application for a rehearing for reconsideration of the permission granted by the commission, as provided by Rule 15. Pursuant to authority granted, the defendants filed four separate condemnation proceedings in the Superior Court of DeKalb County and in two of the proceedings the City of Doraville was named as a party. They filed no pleadings in the case nor entered any appearances. Judgments in the condemnation proceedings have been entered and fee simple title to the tracts sought to be condemned have been vested in the defendants and they have expended a total sum of $197,430 in the acquisition of the property to be used for the purpose of constructing the proposed yard facility, of which $147,844 was expended prior to the filing of the instant complaint.

In the defendants' answer to the motion to dismiss it was asserted that the four ordinances of the City of Doraville were unconstitutional and invalid and violated stated provisions of the laws and Constitution of Georgia, as well as the 14th Amendment to the Constitution of the United States. It was further asserted that said ordinances violated Article IV, Section II, Paragraph II (*Code Ann.* § 2-2502) of the Constitution of Georgia which provides: "The exercise of the police power of the State shall never be abridged, nor so construed as to permit the conduct of business in such manner as to infringe the equal rights of others, or the general wellbeing of the State." "For the reason that the said provisions of said ordinance absolutely prohibit the construction, erection or operation of a railroad switching yard within the corporate limits of the City of Doraville and thus constitute an unlawful and illegal attempt by the municipality, acting under the guise of its police power, to impose upon a public utility essential

to the welfare of the people of the State of Georgia conditions of operation which would confiscate its property and destroy its power to serve the public; and as such is an unlawful and illegal attempt by the municipality to exercise police power in regulating and supervising the operation of railroads in the State of Georgia, whereas such power has been expressly delegated by the General Assembly to the Georgia Public Service Commission. Ga. Laws 1907, pp. 72, 75; Ga. Laws 1922 pp. 143, 144 (Code § 93-307)." As related above, the court sustained the motion to take into consideration the ordinances and the record of the hearing before the Georgia Public Service Commission and the order thereon.

■ The main and controlling issue as we view it in this case is, where the Georgia Public Service Commission acting under the laws of this State, granted to the defendants, a common carrier by rail, authority to condemn specific property for the necessary expansion of its facilities to serve the public, does the municipality in which the proposed facilities are to be erected have the power to prohibit the use of such property for the purpose authorized by the Georgia Public Service Commission?

The record of the hearing and proceedings before the Georgia Public Service Commission contains the following findings and conclusions of the commission: "The members of the Doraville City Commission (except one who was ill) appeared at the hearing in opposition to the proposed yard construction.

"Under Section 94-321 of the Code of Georgia of 1933 as amended, this commission's jurisdiction in condemnation proceedings is limited to two areas. First specified in that code section is whether or nor the construction necessitating the condemnation will result in the elimination of a passenger or freight station on the line of railroad seeking such condemnation. Second is approval of the taking of the property designated for the public use or uses desired.

"The record is clear that there will be no station elimination resulting from the construction of a yard at Doraville at the location and in the manner proposed. The record is also uncontradicted that the existing railroad yard facilities of the applicants in the Chamblee-Doraville area are inadequate to serve the needs of the railroad users of service in that area and that new facilities

must be provided to furnish the needed services both for existing industry and those known to be moving into the areas as well as for anticipated future development. The yard proposed is in a location practical for serving the industries contemplated and there is no doubt that the taking of the property for the yard will be for such a public use as is contemplated by the statute.

"The question of proximity of the proposed yard to the petroleum products tanks in the area would seem to have been considered by the proper authorities and found to not increase the fire hazard—the record containing a letter from the DeKalb County Fire Department to the Phillips Petroleum Company advising that the location of the proposed tracks in reference to the tanks '. . . will meet the approval of this office and also the State Fire Marshal's office.' It should also be noted that another petroleum company in the same area already has tanks much closer to the existing tracks than the Phillips tanks would be and is constructing another such tank—also closer—apparently without objection from anyone.

"It is readily evident that the opposition to the proposal stems primarily from dispute as to the measure of damages (both direct and consequential) and the fear of possible interference with vehicular traffic movements over railroad crossings. The question of damages is, of course, not a matter for this commission to determine—that jurisdiction lying with the courts. The problem of traffic flow over crossings and the location and cost of grade separation structures is likewise not a matter for this commission to determine—that authority lying with the State, county or city officials having jurisdiction over the roads and streets involved. The anticipated increased severity of the latter problem in the future seems to depend upon the increased use of the crossings by motor vehicles and not upon increase in rail movements due to the yard here proposed to be constructed—the railroad applicants stating unequivocally and repeatedly that switching operations at the new yard will be conducted from the north end of the yard and that there would be no added rail traffic over Winters Chapel Road or Flowers Road as a result of the yard being constructed in the proposed location.

"Under the circumstances, it is the opinion of the commission

that the applicants have satisfactorily shown that their application complies with the conditions of Section 94-321 of the Code of Georgia of 1933 as amended and that the rights here sought are necessary and essential for the purpose of construction of the proposed yard and that such construction is required for the safe and essential conduct of the applicants' business as a public carrier and for public purposes."

The order of the commission decided that the defendants were authorized to exercise their right of eminent domain or condemnation as to the described tracts of land.

The Public Service Commission has the power to make, prescribe and enforce all reasonable rules and regulations and orders, as may be necessary to require the defendants to promptly receive, forward and deliver to destination all freight of every character which may be tendered or received by them for transportation (*Code* § 93-302); to establish and maintain such public service and facilities as may be reasonable and just (*Code Ann.* § 93-307); to prescribe rules with reference to spur tracks and side tracks, with reference to their use and construction, removal or change, with full power to compel service to be furnished to manufacturing plants, warehouses, and similar places of business (*Code* § 93-308). *Code Ann.* § 94-321 which grants to railroads the power to improve their lines with the right of condemnation, grants authority to the defendants "to build and maintain such additional depots, tracks and terminal facilities as may be necessary for the proper accommodation of the business of the company; . . . Provided, further, that the right of condemnation under this section shall not be exercised until the Public Service Commission, under such rules of procedure as it may provide, shall first approve the taking of the property or right-of-way designated for the public use or uses desired."

The City of Doraville under its charter has not been granted the power to regulate the construction or operation of a railroad switching yard within its city limits, nor have we found any general law which grants to it such authority. A municipality, being a creature of the State, has only such direct power as is granted to it by the State and if there is a reasonable doubt of the existence of a particular power, the doubt is to be resolved in the nega-

tive. *Beazley v. DeKalb County,* 210 Ga. 41 (77 SE2d 740). "The Municipal Home Rule Act of 1965" (Ga. L. 1965, p. 298; Ga. L. 1966, p. 296) provides as follows: "(a) The power granted to municipalities in subsections (a) and (b) of section 69-1017 shall not be construed to extend to the following matters or any other matters which the General Assembly by general law has preempted or may hereafter preempt, but such matters shall be the subject of general law or the subject of local Acts of the General Assembly to the extent that the enactment of such local acts is otherwise permitted under the Constitution: . . . 5. Action expanding the power of regulation over any business activity regulated by the Public Service Commission beyond that authorized by charter or general law or by the Constitution."

In the case of *Tift v. Atlantic C. L. R. Co.,* 161 Ga. 432 (3) (131 SE 46), after the Public Service Commission had granted a railroad's application to condemn certain land in the City of Tifton for the purpose of laying its tracks in a public street and where an attempt was made to enjoin the condemnation proceedings, this court said: "As a general rule a railroad company must obtain the written consent of the municipal authorities before it can lay a track on a street of any city in this State; but the lack of such permission does not prevent a railroad company from exercising the right of eminent domain to condemn a municipal alley as a right of way for the extension of one of its tracks in such alley for public use. Such consent is not a condition precedent to the preparatory step of condemning a right of way on which to lay such track."

Where the State has established an agency of its own with plenary power to regulate utilities, it is universally recognized that municipalities cannot properly interpose their local restrictions unless and only to the extent any power to do so is expressly reserved to them by statute. 12 McQuillin, Municipal Corporations 27, § 34.09; 299, § 34.146. A municipality cannot by ordinance impose upon a public utility essential to the welfare of the people, conditions of operation or maintenance of its property, which would confiscate or destroy its power to serve the public. City of Cape Girardeau v. St. Louis-San Francisco R. Co., 305 Mo. 590 (267 SW 601, 36 ALR 1488).

■ It is contended by the appellants that the powers granted to railroads by the General Assembly should not be construed "to allow the maintenance of a nuisance, nor to permit the construction of some facility which is harmful to the safety, health and welfare of citizens." It is urged that the legislature did not intend to allow the railroad itself or through the Public Service Commission to conduct its business in such a manner as to maintain a nuisance or to become a traffic, fire, safety and health hazard. The answer to this contention is that the switching facility has not been constructed and that the appellant is rather anticipating that after is construction it will become a nuisance. Clearly, there is no nuisance presently existing and equity will not enjoin such proposed construction on a mere apprehension of irreparable injury. *Wingate v. City of Doerun,* 177 Ga. 373 (170 SE 226). A railroad yard is not a nuisance per se. *Ga. R. & Bkg. Co. v. Maddox,* 116 Ga. 64 (42 SE 315). In the last cited case several residents in a residential section of the City of Atlanta sought to restrain the defendant railroad from operating a terminal yard located on its right of way near the residences of the plaintiffs. It was there held that where a railroad terminal yard is located and its construction authorized under statutory powers, if it be constructed and operated in the proper manner it cannot be adjudged a nuisance. In the opinion it was said: "From what we have said above it is seen that the terminal yard, the operation of which the defendants in error seek to enjoin, was located and its construction authorized under statutory powers. In such cases the general rule, supported practically by an almost unbroken line of authorities, is, that a work so located and constructed, if constructed and operated in a proper manner, can not be adjudged a nuisance. This applies with special force to works thus authorized to facilitate transportation on railroads, which are of a quasi-public nature. [citations omitted] . . . From this rule it follows that injuries and inconveniences to persons residing near such works, from noises of locomotives, rumbling of cars, vibrations produced thereby, and smoke, cinders, and soot, and the like, which result from the ordinary and necessary, and therefore proper, use and conduct of such works, are not nuisances, but are the necessary concomitants of the franchises granted." P. 77.

The evidence is wholly insufficient to authorize the grant of a restraining order on the theory that the proposed switching yards would be a nuisance.

The court did not err in entering the judgment complained of.

*Judgment affirmed. All the Justices concur.*