72264. GEORGIA PUBLIC SERVICE COMMISSION et al. v.
CENTRAL OF GEORGIA RAILROAD COMPANY.
(346 SE2d 568)

, BIRDSONG, Presiding Judge.

The Central of Georgia Railroad under OCGA § 46-8-121 petitioned the Georgia Public Service Commission (PSC) for approval of the railroad's condemnation of certain land in Lee County, to be used to construct a new rail yard including track and switching facilities, to replace the existing rail yard. After extensive hearings, the PSC denied the petition. The superior court reversed the PSC'S decision, holding that the PSC "attempted to arrogate unto itself power and authority which it does not possess as a matter of law," and, secondly, that upon the evidence, the PSC acted arbitrarily and capriciously and abused its discretion in denying the railroad's application to condemn. The PSC appeals. *Held*:

1. The appellee railroad contends, and the trial court apparently found, that the PSC has no power or authority to pass upon questions of the necessity, propriety and expediency of the taking, but is limited to two determinations: whether the proposed action will eliminate any existing facility (which is not materially in issue on this appeal); and "whether the taking of the property will be for such public use as is contemplated by the statute." For the second proposition, the railroad cites *City of Doraville v. Southern R. Co.*, 227 Ga. 504 (181 SE2d 346); *Tift v. Atlantic Coast Line R. Co.*, 161 Ga. 432 (131 SE 46); and also cites the PSC decision in the latter case. However, these authorities do not support appellee's contention.

In the law existing before 1914, the railroads' unrestricted power to condemn was granted by their charters and, later, by the 1892 Act which is now embodied at OCGA § 46-8-124. The requirement of approval by the Commission was placed upon the railroads in 1914, in connection with the right to condemn for *improvements*. OCGA §§ 46-8-120 and 46-8-121. The code at that time gave the railroads the right to condemn for improvements, provided further, that the right

of condemnation under this section *shall not be exercised until the [PSC] . . . shall first approve the taking of the property or right-of-way* designated for the public use or uses desired. Ga. L. 1914, p. 144; Ga. L. 1957, p. 403 (former Code § 94-321; see OCGA § 46-8-121). This code section thus never did limit the PSC's approval power to a determination whether the subject property was intended for public use. Neither did *Tift*, supra, nor *City of Doraville*, supra, nor the PSC decision in the latter case, although one of the issues in those cases was whether the intended use was public or private.

The present statute provides that in the case of condemnation for construction of improvements, "the right of condemnation under this Code section *shall not be exercised until the [PSC] . . . first approves the taking of the property."* (Emphasis supplied.) OCGA § 46-8-121. No limitation is placed upon the approval power of the PSC in this authorizing statute. The PSC's approval is stated as the condition precedent to the railroad's exercise of its power to condemn in the case of improvements. *Hightower v. Chattahoochee Indus. R.*, 218 Ga. 122 (126 SE2d 664).

It thus clearly appears that, far from being "plainly ludicrous" as the appellee asserts, the PSC's position that under Article 5 of the Act it has the power to determine the necessity, propriety, and expediency of the condemnation in this case for improvements and the like, is well founded. OCGA §§ 46-8-121; 46-8-120.

However, in Article 4, the Act also grants to railroads the power without restriction to condemn for the original "construction and maintenance" of the railroad, its branches and its necessary accommodations. OCGA §§ 46-8-100 (3); 46-8-124. The basis for such a distinction seems at first obscure. The clue lies in the fact that when the railroads were first abuilding they were lauded for the progress by which they first built, and then expanded and improved lines and facilities; their power to condemn was unrestricted, and that power was "not exhausted by a single exercise." *Gardner v. Ga. R. &c. Co.*, 117 Ga. 522, 530-531 (43 SE 863).

Thus, in *Gardner*, decided in 1904, the railroad unrestrainedly exercised its condemning power to acquire land for enlarging its main line to two tracks and building "additional facilities." The charter of the company in *Gardner* gave it the right (which the court found was not diminished by the 1892 Act) to cut and carry through another's land, to take timber or other materials at will and without interruption, and the right to condemn: "any lands . . . that they may find necessary . . . to locate, run, and establish the aforesaid railroad and railroads . . . or to vary or alter the plan or plans, and of such breadth and dimensions through the whole course of the road and roads, as they may see fit. . . . Possibly, in providing for the 'altering and changing of plans' . . . and in giving to this and other companies

the power to provide for the present and for the greater future, [the framers of the railroad charters] were but looking forward to a destiny which we feel sure awaits the people of this State. . . . [I]n all cases where the right to condemn is limited only by the necessities of the railroad company, the exercise of that right may be repeated as often as the necessity arises. . . . We have no doubt that it was the intention of the General Assembly, in chartering the defendant company in the present case, to give it the power to take private property whenever and wherever it should be necessary to carry out the purpose of its creation. If the citizen could not, in the first instance, prevent the taking of his land for the building of the railroad, what reason is there now to allow him to check its improvement and increased ability to serve the public. . . . The railroad company had the same power to acquire land . . . for the purpose of varying, altering, and repairing their road, as for the original purpose of locating and constructing it. [Cit.] . . . [N]othing would be more inconvenient than to hold that when the company had once taken a quantity of land . . . they could not afterwards, if it was found that the land taken was insufficient for the purposes allowed, come for more. . . ."

In its ardent praise for the private railroad's limitless power, the *Gardner* case probably did more to hasten the demise of that power than as if the case had set about to do it on purpose. The legislature must have felt more than a quiver of alarm to see that power put on such full display, for it shortly set about to limit it, in 1914, in the case of improvements, relocations, and enlargements and the like.

Appellee contends that by long precedent the railroads' powers of eminent domain can never be abridged by the courts. See, cited for this proposition, *Coffee v. Atkinson County*, 236 Ga. 248 (223 SE2d 648). But that "long precedent" refers to the eminent domain power of the state (OCGA § 22-1-2), which is constitutional. The railroads are private companies. They have no constitutional power of eminent domain. What power they have to condemn is purely a creature of statute (see OCGA §§ 22-2-1; 22-2-100), and may likewise properly be limited or modified, or in fact taken away altogether as the legislature deems necessary. The statute makes clear that the PSC's power and authority here is not one of review, judicial or otherwise, after the fact, but is original authority in the first instance.

We have no difficulty in holding that this is one of those instances in which it is required that the railroad, having once taken the land it deemed necessary and now having "come for more," must suffer the "inconvenience" (*Gardner*, supra) of having to ask the PSC to approve the taking. The railroad sought to take this land for the relocation and expansion of its existing rail yard facilities "for the proper accommodation of the business of the company." OCGA § 46-8-120 (a) (4). The PSC's clear authority to approve the taking before

the company can exercise its power of condemnation is "a valuable safeguard against [the owner's] property being improvidently taken by railroad companies. When the railroad undertook to take the plaintiff's property without complying with the mandate of the code, it amounted to an attempt to take the same without due process of law." *Pickett v. Ga., Fla. &c. R. Co.*, 98 Ga. App. 709, 712 (106 SE2d 285). By its nature, this approval power includes the power to determine the necessity, propriety and expediency of the condemnation.

2. The question, finally, is whether the trial court erred in finding the PSC acted arbitrarily and capriciously and abused its discretion in denying the approval of this condemnation. The Supreme Court has held: "Neither the trial court, nor this court on review, will substitute its own discretion and judgment for that of the [PSC] where it has exercised its discretion in a matter over which it has jurisdiction, and neither court will interfere with a valid order of the [PSC] unless it be clearly shown that the order is unreasonable, arbitrary or capricious. [Cits.]" *Greyhound Lines v. Ga. Public Svc. Comm.*, 236 Ga. 76 (222 SE2d 347). "[I]f the record contains any reasonable basis for the decision of the commission we have no authority to set it aside. [Cits.] . . . The question is whether the entire record *demands* a different result from that reached by the commission." (Emphasis supplied.) Id. p. 77.

The trial court was bound in this case to uphold the PSC's decision "if the record contains any reasonable basis for the decision." Id. Upon review, we find that the record contains a reasonable basis for the decision and the denial of condemnation was not unreasonable, arbitrary or capricious.

The record and order of the PSC show the commission based its decision on a determination "whether the public interest is best served by the condemnation of this particular piece of property for the particular purpose sought. . . . Where the decision . . . is the reasonable necessity of condemning a particular piece of property for public use . . . [we will] assess the degree of necessity of condemnation proven, [balanced], to the degree such necessity is shown, against other public interest factors including . . . the interest, inconvenience and deprivation of those whose property is sought to be condemned, impact on the environment and the surrounding community and on the shipping and consuming public." We find this statement of the PSC's purpose and function of approval to be reasonable and not in itself arbitrary or capricious.

The PSC found that the railroad had performed no environmental impact study; that the noise level would be at a constant unacceptable level; that no study was performed to forecast the effect of noxious fumes of diesel engines or the potential damage to the area due to vibrations. The PSC found that the railroad's evidence and

testimony "conflicts with the testimony of other witnesses . . . as well as the Commissioners' own assessments . . . based on the facts presented at the hearing," and found it "unpersuasive." The PSC further found the railroad in selecting the site focused primarily on its customers' needs and not "to any appreciable degree" on the needs and desires of the community. The PSC found that of the 200 acres sought to be condemned, 20 acres belonged to a private owner whose access road "would be blocked by every northern movement of a train from the new facility"; and 170 acres was prime farmland belonging to the Tolee Plantation, Inc. It found the condemnation would interfere with two irrigation systems, and would destroy an irrigation well, 80 acres of mature pecan trees and a pecan nursery and thereby ruin a three-year-old pecan business. The PSC found that this property had belonged to the railroad until 1973 when it sold the property to the owners, who relied upon that sale in developing and using it. The PSC concluded further that the proposed facility "would have the effect of stunting the growth of Lee County."

On appeal, in support of the trial court's finding that the PSC overstepped itself, the appellee railroad contends the PSC had no business applying a novel "public interest/particular property standard" and balancing factors such as environmental impact of noise, fumes and vibrations; that a railroad is by law not a nuisance per se and therefore cannot be objected to on the basis of any of its unpleasant side effects. However, the PSC is by statute not restricted to supplying the needs and wants of the railroad at any cost to the environment. The fact that a railroad is not a legal nuisance per se obviously has nothing to do with whether and how it affects the community in fact.

The independent site study found five "acceptable" sites, though each had disadvantages. However, the railroad asserts the evidence overwhelmingly showed this one to be the only suitable site, so that the denial of this condemnation is unreasonable and capricious. The railroad's assumption here seems to be that the PSC is obliged to approve *a* condemnation and therefore it must be this one because it is the only suitable site. But whether a more suitable site was proposed is not controlling because *the PSC is not obliged to approve a condemnation under § 46-8-121 for a proposed purpose.* The PSC at the threshold considered the "reasonable necessity" of this condemnation "to the degree such necessity is shown," balanced against other factors; in its denial inheres the conclusion that the reasonable necessity of it was outweighed by those factors. The PSC had the peculiar advantage of hearing the evidence and applying its own knowledge and criteria. Even if we disagreed with the decision, we are nevertheless not empowered to substitute our judgment. On appeal the appellee railroad has not argued persuasively that the *necessity* of condemning

a property for the proposed purpose is so strong as to *demand* (*Greyhound Lines*, supra) the condemnation of this property despite the numerous valid objections to it.

The appellee contends that the fact that any damages to the property would be compensated means the PSC cannot consider the potential damage as a factor in denying the condemnation. But clearly the fact of compensation in a case like this does not justify condemnation of a property regardless of detriment to the property. Furthermore, the determination of the PSC as a factor that this land was owned by the railroad until 1973 and had been developed in reliance upon the sale of it as property not needed by the railroad, is not an improper exercise in judicial equity of estoppel but is an exercise of its primary discretion as to matters of fact. See, moreover, *Gardner*, supra, pp. 534-536; *Alabama Great Southern R. v. Gilbert*, 71 Ga. 591, 594. See also *Mooney v. Rome R.*, 76 Ga. 749. Finally, the opinion of the Lee County Commissioners in the matter was not irrelevant.

The judgment of the trial court, being founded upon the misapprehension that the PSC "arrogated" to itself power it did not have, and having proceeded erroneously thereon to the conclusion that the decision was arbitrary, unreasonable and capricious, is reversed. The evidence does not *demand* approval of this condemnation by the PSC. *Greyhound Lines*, supra.

*Judgment reversed. Banke, C. J., and Sognier, J., concur.*

## ON MOTION FOR REHEARING.

The appellee railroad insists that the earlier version of the statute giving the PSC approval power of condemnation for improvements (former Code Ann. § 94-321) proves the PSC's power is limited simply to a determination whether the designated use of the property is for public or private use, because it provided the railroad's "right of condemnation under this section shall not be exercised until the [PSC] . . . shall first approve the taking of *the property or right-of-way designated for public use or uses desired.*"

The appellee railroad divines that the lawmakers meant to say the PSC "shall . . . approve the taking of the property or right-of-way [if it is] designated for public use or uses desired." Such a construction of the language is too far away from syntactical reality to be seriously considered, but since the railroad insists upon it, we do so here with the comment that if ever there was any chance to think the lawmakers meant to say what the railroad imagines, the lawmakers removed it in the present statute, which says, simply and finally, that the railroad's "right of condemnation under this section [for purposes of improvements under § 46-8-120] shall not be exercised until the

commission . . . first approves the taking of the property."

The fact that some cases may have involved the important issue of whether the taking *was* for public use, certainly is not a fact which forever limits the PSC to such an undertaking, nor has any case said so.

The appellee has not shown the evidence before the PSC *demanded* approval of this condemnation, and that the PSC acted arbitrarily and capriciously in denying it. Indeed, the PSC considered the evidence carefully and the cases cited by the appellee prove that we, the courts, are not at liberty to substitute our judgment for theirs. *Concept Capital Corp. v. DeKalb County*, 255 Ga. 452 (339 SE2d 704); *City of Atlanta v. Heirs of Champion*, 244 Ga. 620, 621 (261 SE2d 343); *Coffee v. Atkinson County*, 236 Ga. 248 (223 SE2d 648); *Sweat v. Ga. Power Co.*, 235 Ga. 281 (219 SE2d 384); *Department of Transp. v. Livaditis*, 129 Ga. App. 358 (199 SE2d 573).

*Motion for rehearing denied.*

DECIDED JUNE 2, 1986 —
REHEARING DENIED JUNE 19, 1986 — 

*Michael J. Bowers, Attorney General, H. Perry Michael, First Assistant Attorney General, Jim O. Llewellyn, Senior Assistant Attorney General, H. Jeff Lanier, Assistant Attorney General*, for appellants.

*Earle B. May, Jr., Benjamin M. Garland*, for appellee.