S94A1610, S94X1612. CITY OF ATLANTA et al. v. McKINNEY et al.; and vice versa.
(454 SE2d 517)

FLETCHER, Justice.

These appeals involve a challenge to City of Atlanta ordinances that prohibit discrimination on the basis of sexual orientation, establish a domestic partnership registry for jail visitation, and extend insurance and other employee benefits to domestic partners of city employees. The trial court ruled that the city exceeded its powers in enacting the domestic partnership ordinances, but dismissed the claims challenging the anti-discrimination laws. We hold that the city has the power to enact the anti-discrimination and registry ordinances, but exceeded its authority in extending employee benefits to persons who are not dependents under state law. We affirm in part and reverse in part the trial court's grant of judgment on the pleadings to the plaintiffs in Case No. S94A1610 and affirm the grant of the city's motion to dismiss in Case No. S94X1612.

The Atlanta City Council in 1986 amended its charter's bill of rights and its code of ordinances to prohibit discrimination on the basis of sexual orientation. See Ordinances 86-0-0190 & 86-0-0308. The ordinances prohibit sexual orientation discrimination in city employment, artist selection, festival admission, Atlanta Civic Center ex-

hibitors, licensed alcohol beverage establishments, and vehicles for hire. "Sexual orientation" is defined as "the state of being heterosexual, homosexual, or bisexual."

In June 1993, the city council passed an ordinance providing for the establishment of a domestic partnership registry in the city's business license office. Ordinance 93-O-0776 defines "domestic partners" as "two people of the opposite or same gender who live together in the mutual interdependence of a single home and have signed a Declaration of Domestic Partnership." The declaration is a city form in which the partners "agree to be jointly responsible and obligated for the necessities of life for each other." The ordinance extends visitation rights to city jails to domestic partners and their family. In August 1993, the city council adopted an ordinance that extended employee benefits to domestic partners.

> The City of Atlanta recognizes domestic partners as a family relationship and not a marital relationship and shall provide sick leave, funeral leave, parental leave, health and dental benefits, and any other employee benefit available to a City employee in a comparable manner for a domestic partner, as defined herein, as for a spouse to the extent that the extension of such benefits does not conflict with existing laws of the State of Georgia.

Ordinance 93-O-1057, § 3.

State representative Billy McKinney, two city council members, a city taxpayer, a city employee, and a retired city employee filed a declaratory judgment action seeking to have the four ordinances declared invalid and unconstitutional and seeking damages. The city moved to dismiss the complaint for failure to state a claim. After a hearing, the trial court granted the plaintiffs a partial judgment on the pleadings under OCGA § 9-11-12 (c), declaring the domestic partnership ordinances ultra vires, void, and unconstitutional under the Georgia Municipal Home Rule Act and the Georgia Constitution, but dismissed the plaintiffs' claims related to the anti-discrimination ordinances and damages. The city appeals the judgment invalidating the domestic partnership ordinances in Case No. S94A1610. McKinney appeals the dismissal of the claims challenging the anti-discrimination ordinances and seeking damages in Case No. S94X1612.

*Case No. S94A1610. DOMESTIC PARTNERSHIP ORDINANCES*[1]

1. "Municipal corporations are creations of the state and possess only those powers that have been expressly or impliedly granted to them." *Porter v. City of Atlanta*, 259 Ga. 526 (384 SE2d 631) (1989). The Municipal Home Rule Act of 1965 grants a city the legislative power to adopt ordinances "relating to its property, affairs, and local government for which no provision has been made by general law and which are not inconsistent with the Constitution." OCGA § 36-35-3 (a) (1993). In determining the validity of an ordinance, this court must decide whether the city had the power to enact the ordinances and whether the exercise of its power is clearly reasonable. *Porter*, 259 Ga. at 526.

The city argues that the registry ordinance merely provides for an internal list of city residents and employees who have entered into written agreements similar to the one that this court upheld in *Crooke v. Gilden*, 262 Ga. 122 (414 SE2d 645) (1992), and grants domestic partners visitation rights to city jails. The ordinance states that it does not attempt to alter state laws regulating private or civil relationships.

> Rights and Duties Created. Neither this ordinance nor the filing of a Declaration of Domestic Partnership shall create any legal rights or duties from one of the parties to the other, except those which specifically refer to Domestic Partnership. Nothing herein shall be construed to explicitly or implicitly create a marital relationship. This ordinance does not attempt to alter or affect the laws in the State of Georgia that regulate any private or civil relationships.

Ordinance 93-0-0776, § 2 (A).

Courts have a duty to construe a statute to sustain it if its language is susceptible to more than one construction. *Mayor &c. of Hapeville v. Anderson*, 246 Ga. 786 (272 SE2d 713) (1980). Following this rule, we construe the registry ordinance as creating only a registration system and not any legal rights. Under this construction, the ordinance is valid. First, the city possesses the power to grant visitation rights to the city jail to registered persons. The Atlanta City Charter gives the city the power to "operate, maintain, regulate, [and] control . . . corrective, detentional, penal and medical institutions, agencies and facilities." Ga. L. 1973, pp. 2188, 2256. Second, the regis-

---

[1] Since the trial court based its orders on the pleadings alone and there are no disputed issues of fact in these appeals, the validity of the challenged ordinances is a question of law that this court reviews de novo.

try ordinance is a reasonable exercise of the city's power. The registry is merely the mechanism by which the city can identify the residents and employees who may exercise their jail visitation rights because of their declaration as domestic partners. Because the registry and jail visitation law as construed is a reasonable ordinance related to the city's affairs, we reverse the trial court's grant of judgment on the pleadings concerning this ordinance.

2. The Georgia Constitution prohibits cities from enacting special laws relating to the rights or status of private persons. Ga. Const., Art. III, Sec. VI, Par. IV (c); see also id. (a) (prohibiting a city from enacting a local or special law for which provision has been made by general law). The home rule act also precludes cities from taking "any action affecting the private or civil law governing private or civil relationships, except as is incident to the exercise of an independent governmental power." OCGA § 36-35-6 (b). Although the meaning of this provision is ambiguous, it indicates that the state does " 'not wish to give our cities the power to enact a distinctive law of contract.' " See *Marshal House, Inc. v. Rent Review &c. Bd.*, 260 NE2d 200, 204 (Mass. 1970) (quoting Fordham, "Home Rule-AMA Model," 44 Nat. Municipal Review, 137, 142). At a minimum, it means that cities in this state may not enact ordinances defining family relationships. The Georgia General Assembly has provided for the establishment of family relationships by general law. See, e.g., OCGA §§ 19-3-1 to 19-5-17 (1991); see also *City of Bloomington v. Chuckney*, 331 NE2d 780, 783 (Ind. App. 1975) ("a city should not be able to enact its own separate law of contracts or domestic relations since these areas are unsuited to less than statewide legislation").

The Municipal Home Rule Act specifically grants cities the authority to provide insurance benefits for a city's "employees, their dependents, and their survivors." OCGA § 36-35-4 (a). The issue here is whether the city impermissibly expanded the definition of dependent to include domestic partners. Although the home rule act does not define the term "dependent," other state statutes define a dependent either as a spouse, child, or one who relies on another for financial support. Compare OCGA § 20-2-886 (granting right to health insurance coverage to the spouse and dependent children of public school employees); OCGA § 45-18-8 (1990) ("spouse and dependent children" may be included in the health care coverage of state and other public employees), and OCGA § 34-9-13 (a) & (b) (1993) (under workers' compensation statute a wife, husband, or child is "presumed to be the next of kin wholly dependent for support upon the deceased employee") with OCGA § 48-7-26 (Supp. 1994) (adopting the Internal Revenue Code's definition of dependent as an individual who receives half of his or her support from the taxpayer and is a member of the taxpayer's household). Domestic partners do not meet any of these

statutory definitions of dependent.

The powers of cities must be strictly construed, and any doubt concerning the existence of a particular power must be resolved against the municipality. *City of Macon v. Walker*, 204 Ga. 810, 812 (51 SE2d 633) (1949); *City of Doraville v. Southern R. Co.*, 227 Ga. 504, 510 (181 SE2d 346) (1971). We conclude that the city exceeded its power to provide benefits to employees and their dependents by recognizing domestic partners as "a family relationship" and providing employee benefits to them "in a comparable manner . . . as for a spouse." Accord *Lilly v. City of Minneapolis*, 527 NW2d 107 (Minn. Ct. App. 1995). Since it is beyond the city's authority to define dependents inconsistent with state law, we affirm the trial court's ruling invalidating the benefits ordinance as ultra vires under the home rule act and the Georgia Constitution.[2]

### *Case No. S94X1612. ANTI-DISCRIMINATION LAWS*

3. Under its police power, a city may enact ordinances to protect the health, safety and general welfare of the public. *H & H Operations v. City of Peachtree City*, 248 Ga. 500, 501 (283 SE2d 867) (1981). Numerous states have upheld municipal ordinances that prohibit discrimination as a proper exercise of a municipality's police power. See, e.g., *Hutchinson Human Relations Comm. v. Midland Credit Mgmt.*, 517 P2d 158, 162 (Kan. 1973). Similarly, the City of Atlanta has the authority to enact anti-discrimination laws under its general police power. This power enables the city to prohibit discrimination on the basis of race, color, national origin, religion, sex, and sexual orientation as part of its regulation of city employment, events, and vendors.

Besides a municipality's general police powers, state law grants cities power related to the administration of municipal government. See OCGA § 36-34-2. This grant of authority does "not define the means by which the cities would and could manage their affairs" or "prohibit municipal governing authorities from choosing how such powers shall be exercised." *Sadler v. Nijem*, 251 Ga. 375, 378 (306 SE2d 257) (1983). Included among those powers is authority for cities "to define, regulate, and alter the powers, duties, qualifications, compensation, and tenure of all municipal . . . employees." OCGA § 36-34-2 (2). This provision provides additional authority for a city to enact equal employment opportunity laws prohibiting discrimination in city government. The challenged ordinances do not purport to regu-

---

[2] We do not address whether a municipal corporation could enter into a contract with an insurance company providing for group accident and health coverage for domestic partners. See 1994 Op. Atty. Gen. 94-14.

late private employers or public employers other than the City of Atlanta.

In his dissent Justice Carley argues that state law preempts the city's attempt to prohibit discrimination on the basis of sexual orientation. He cites no state law that reserves to the state the right to determine which classifications of people are protected from discrimination or prevents municipalities from enacting laws against discrimination. To the contrary, the equal protection clause to the Georgia Constitution states that "[n]o person shall be denied the equal protection of the laws." See Ga. Const., Art. I, Sec. I, Par. I. The legislative history of that provision shows that committees drafting the Constitution chose not to specify classes of persons entitled to equal protection in favor of a more general prohibition against discrimination. See *Grissom v. Gleason*, 262 Ga. 374, 377, n. 3 (418 SE2d 27) (1992); id. at 382-383 & n. 6 (Sears, J., concurring specially). Moreover, the Georgia Fair Employment Practices Act of 1978 expressly permits local governments to pass laws prohibiting discrimination in public employment. See OCGA § 45-19-21 (act shall not be construed to exclude local or federal laws on the same subject matter).

The dissent's argument that anti-discrimination law is "diluted by expansion of the number of protected classes" is similarly without a basis in law or fact. Individuals can be subjected to more than one type of irrational discrimination which the government is at liberty to prohibit. The ordinances do not require any special treatment of the specified classes; they just forbid differential treatment.

Because the anti-discrimination ordinances extend only to the city's policies governing its employees and property and to those businesses that state law leaves to the city to regulate, we conclude that they are reasonable laws related to the city's affairs and local government. Therefore, we affirm the trial court's granting of the motion to dismiss the claims.

4. There is no merit to McKinney's claims for money damages against the city, mayor, or city council members for passing and approving the challenged legislation. See OCGA § 36-33-1 (b); see also *Gilbert v. Richardson*, 264 Ga. 744 (452 SE2d 476) (1994) (state officers and employees shall not be subject to suit or liability for performing official functions, unless they perform ministerial acts negligently or perform ministerial or discretionary acts with malice or an intent to injure). Accordingly, we also affirm the trial court's dismissal of all damages claims.

*Judgment affirmed in part and reversed in part in Case No. S94A1610. All the Justices concur, except Carley and Thompson, JJ., who dissent as to Division 1, and Hunt, C. J., Sears and Hunstein, JJ., who dissent as to Division 2. Judgment affirmed in Case No. S94X1612. All the Justices concur, except Carley, J., who dis-*

*sents as to Division 3.*

SEARS, Justice, concurring in part and dissenting in part.

I agree with the majority's decision that the registry ordinance and the anti-discrimination ordinance are valid exercises of the authority of the municipality. Majority at (1) and (3). However, I would hold that the benefits ordinance is also valid under the Home Rule Act.

The power granted municipalities by the Home Rule Act does "not include the power to take any action affecting the private or civil law governing private or civil relationships, except as is incident to the exercise of an independent governmental power." OCGA § 36-35-6 (b). However, the benefits ordinance under consideration in this case in no way affects existing "private or civil law." Furthermore, the municipality has the "independent governmental power" to provide benefits for "its employees, their dependents, and their survivors." OCGA § 36-35-4 (a). The benefits ordinance simply defines a category of persons eligible for benefits as dependents by defining "domestic partners" as persons who are "mutually interdependent" and who "agree to be jointly obligated and responsible for the necessities of life for each other." There is no one general law in this state establishing a uniform definition of "dependent," see majority at 164-165, and the requirements of a domestic partnership certainly indicate that a city employee's domestic partner must rely, at least in part, on the employee for financial support. See *Ins. Co. of N. America v. Cooley*, 118 Ga. App. 46, 48 (162 SE2d 821) (1968) (dependency depends on whether the alleged dependent was supported in whole *or in part* by the other party).

For these reasons, I dissent to Division 2 of the majority opinion.

I am authorized to state that Chief Justice Hunt and Justice Hunstein join in this dissent.

CARLEY, Justice, concurring in part and dissenting in part.

I concur in the affirmance of the trial court's ruling invalidating the "benefits" ordinance and the trial court's dismissal of all damages claims. However, upon consideration of the Municipal Home Rule Act of 1965 and the Georgia Constitution of 1983, I cannot agree with the reversal of the trial court's ruling invalidating the "registry" ordinance and the affirmance of the trial court's dismissal of the claims related to the "sexual orientation" ordinances. Accordingly, I concur in Divisions 2 and 4 and dissent to Divisions 1 and 3.

1. The registry ordinance begins with many requirements for recognition as a domestic partnership: living together for at least six months, a mutually interdependent relationship intended to be lifelong, an agreement to be jointly obligated for the necessities of life for

each other, not married to anyone else, 18 years of age or older, competency to contract, not related by blood closer than would bar marriage, no other domestic partner, filing of a termination of the domestic partnership if any of these facts change, and termination of any prior domestic partnership. The registry ordinance further states that any entity which requires evidence of the existence of a domestic partnership shall accept a Declaration of Domestic Partnership as complete proof, and provides that such declaration is reasonable proof for qualifying for any present or future domestic partner benefits that private corporations or public institutions offer. Another portion of the registry ordinance gives domestic partners jail visitation privileges which are identical to those of a spouse or other immediate family members. Finally, the registry ordinance provides for termination of the domestic partnership by written notice, death or no longer meeting the qualifications for domestic partnership.

The registry ordinance is much more than "merely the mechanism by which the city can identify the residents and employees who may exercise their jail visitation rights because of their declaration as domestic partners." (Majority opinion, p. 164.) Rather, the City's exercise of its power to grant jail visitation rights is merely one portion of the much broader registry ordinance. Thus, the registry ordinance is *not* "incident to the exercise of an independent governmental power." OCGA § 36-35-6 (b). And, by *requiring* private entities which recognize domestic partnerships to accept a Declaration of Domestic Partnership as complete proof of the existence of a domestic partnership, the ordinance certainly "*affect*[s] the private or civil law governing private or civil relationships. . . ." (Emphasis supplied.) OCGA § 36-35-6 (b). Therefore, in my opinion, the registry ordinance violates Georgia's Home Rule Act.

Furthermore, by defining in detail a new relationship which is very similar to marriage, see OCGA §§ 19-3-1; 19-3-2, and by providing a ready means of proof of that relationship, the registry ordinance is a proscribed "special law *relating* to the rights or *status* of private persons. . . ." (Emphasis supplied.) Ga. Const. of 1983, Art. III, Sec. VI, Par. IV (c); *Giles v. Gibson*, 208 Ga. 850, 851-852 (69 SE2d 774) (1952) (a municipal ordinance is a special law). See also Op. Atty. Gen. 93-26. And, as a special law, the registry ordinance is preempted by this state's general law of marriage and divorce. Ga. Const. of 1983, Art. III, Sec. VI, Par. IV (a); OCGA § 36-35-6 (a). Georgia's law of marriage already provides for "registration" of relationships of the same general type as that defined in the registry ordinance, OCGA § 19-3-30 et seq., and limits such "registration" to couples of opposite sex. The constitutional provision on special laws

was intended to insure that once the legislature entered a field by enacting a general law, that field must thereafter be reserved exclusively to general legislation and could not be open to special or local laws. The terms of the constitution do not limit this rule to those fields and subjects which have been completely exhausted by a general law. It embraces every field and subject which has been covered, though superficially, by a general law.

*City of Atlanta v. Hudgins*, 193 Ga. 618, 623 (1) (19 SE2d 508) (1942). See also *Lomax v. Lee*, 261 Ga. 575, 579 (3) (408 SE2d 788) (1991).

The registry ordinance does not augment or strengthen the general law of marriage. Compare *Grovenstein v. Effingham County*, 262 Ga. 45, 47 (1) (414 SE2d 207) (1992). That general law provides that "[m]arriage is encouraged by the law. Every effort to restrain or discourage marriage . . . shall be invalid and void. . . ." OCGA § 19-3-6. The registry ordinance tends to discourage marriage by providing alternative official recognition of a relationship akin to marriage, but without many of the restrictions found in Georgia's marriage law. See *Sims v. Sims*, 245 Ga. 680, 682 (5) (266 SE2d 493) (1980). For example, termination of a domestic partnership is far easier to accomplish than is termination of a marriage.

Section 2 (A) of the registry ordinance, quoted in the majority opinion, denies that it creates legal rights or duties, "*except* those which specifically refer to Domestic Partnership." (Emphasis supplied.) Section 2 (A) also disclaims any creation of a marital relationship and any attempt to alter or affect Georgia laws regulating any private or civil relationships. However, semantics cannot save an ordinance which violates the constitutional provision on special laws.

This provision of the constitution would be nullified if by play upon words and definitions the courts should hold valid a special law when there existed at the time of its enactment a general law covering the same subject-matter.

*City of Atlanta v. Hudgins*, supra at 623 (1). If in fact the ordinance does not purport to alter or affect Georgia law regulating private or civil relationships, it would seem unnecessary to expressly provide, in Section 7, that *any* person may seek enforcement of the ordinance in law or equity in the "State Court of Fulton County or the Superior Court of Fulton County (or the appropriate courts in DeKalb County for residents of the City of Atlanta in DeKalb County)." Those courts are, of course, state courts of record and of general jurisdiction.

*Crooke v. Gilden*, 262 Ga. 122 (414 SE2d 645) (1992) is in no way

relevant to this case. In *Crooke*, this court upheld the validity of a *real estate* contract providing for mutual contribution toward improvement of the real estate and sharing of expenses and assets. No official status of the kind contemplated by the registry ordinance was at issue in *Crooke*.

2. The sexual orientation ordinances prohibit discrimination, because of sexual orientation, on the part of the City, many alcoholic beverage licensees, and drivers of vehicles for hire. The ordinances also require affirmative action on the part of the City, "to promote the full realization of equal employment opportunity through a positive, continuing program in each department and agency of the City government." Ordinance 86-0-0308, § 1.

Georgia law, like federal law, recognizes and protects certain classifications of people from discrimination. Ga. Const. of 1983, Art. I, Sec. I, Par. II (state equal protection), Par. IV (religious discrimination in holding public office or trust); OCGA §§ 34-1-2 (age discrimination in employment); 34-5-1 et seq. (sex discrimination in employment); 34-6A-1 et seq. (discrimination against handicapped in employment). By these general laws, Georgia has clearly entered the field of anti-discrimination law, yet has not included a person's sexual orientation among the proscribed bases of discrimination. Therefore, the sexual orientation ordinances, like the registry ordinance, are preempted by the general law of this state. See *City of Atlanta v. Hudgins*, supra at 623 (1). See also *Under 21 v. New York*, 482 NE2d 1, 6 (N.Y. 1985); *Delaney v. Superior Fast Freight*, 18 Cal. Rptr. 2d 33, 37-38 (Cal. App. 2d Dist. 1993).

The sexual orientation ordinances neither augment nor strengthen general anti-discrimination law. Compare *Grovenstein v. Effingham County*, supra at 47 (1). To the contrary, general anti-discrimination law is *diluted* by expansion of the number of protected classes which public or private entities are required to consider.

The majority relies on the powers given to municipal corporations by OCGA § 36-34-2. While this statute may authorize ordinances prohibiting discrimination against a class protected by federal or state law, it does not authorize the expansion of protected classes. OCGA § 36-34-2 does not and cannot give a municipal corporation the power to enact an ordinance in violation of the constitutional provision on special laws, Ga. Const. of 1983, Art. III, Sec. VI, Par. IV (a). *City of Atlanta v. Myers*, 240 Ga. 261, 263-264 (2) (240 SE2d 60) (1977). The Fair Employment Practices Act of 1978, also relied upon by the majority, prohibits employment discrimination by the State because of race, color, religion, national origin, sex, handicap, or age. OCGA §§ 45-19-22; 45-19-29. I agree that a municipality may pass a law on the *same* subject matter which is *not inconsistent* with the State's version. OCGA § 45-19-21 (c). In my opinion, however, an or-

dinance which protects more classes than does the Fair Employment Practices Act is inconsistent with the Act. However, even if the sexual orientation ordinances were consistent with the Fair Employment Practices Act, the other provisions of general law enumerated above, which apply to the City and private employers as well as the State, preempt the sexual orientation ordinances.

The registry ordinance creates a parallel institution to marriage, and the sexual orientation ordinances expand the classes of people protected from discrimination by state and federal law. Thus, in enacting these ordinances, the City exceeded its authority under the Georgia Constitution and under Georgia's Home Rule Act.

DECIDED MARCH 14, 1995.

*Joe M. Harris, Jr., Kendric E. Smith, Renata D. Turner, Robin J. Shahar, Clifford E. Hardwick IV,* for appellants.

*Bird & Associates, Wendell R. Bird, David J. Myers, G. Stephen Parker, Joshua R. Kenyon,* for appellees.

*Harry H. Harkins, Jr., J. Patrick McCrary,* amici curiae.