## A95A2253. NORTHWEST GEORGIA REGIONAL HOSPITAL et al. v. WILKINS.

(469 SE2d 786)

BEASLEY, Chief Judge.

Defendants Georgia Department of Human Resources ("DHR") and Northwest Georgia Regional Hospital ("NGRH"), a psychiatric facility operated by DHR, appeal an order denying their motion for summary judgment against the administrator of the estate of Willie Lloyd Wilkins on the grounds that they are immune under the doctrine of sovereign immunity, Ga. Const. 1983, Art. I, Sec. II, Par. IX and OCGA § 50-21-20 et seq., and that they are not liable for the actions of their employees who are themselves immune under OCGA § 37-3-4. Because our ruling on these grounds is dispositive, we do not address others.

The evidence is viewed in favor of the non-movant Wilkins, and he is given the benefit of every doubt and every reasonable inference in his favor on the motion for summary judgment. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). The record reveals that Willie Lloyd Wilkins had spent much of his life in professional care because he was mentally handicapped. He was admitted to NGRH for the fourth time on July 30, 1990, and was assigned to a treatment team chaired by a psychiatrist. Besides being diagnosed with organic mental disorder, he also had mental retardation, epilepsy, cardiovascular disease, thyroid problems, testicular atrophy, hiatal hernia, and chronic bronchitis. He was agitated on occasion and combative and would steal food, drink, and tobacco from other patients.

After determining in April 1992 that Wilkins' condition had improved and that he had received maximum benefit from his stay at NGRH, the treatment team considered Wilkins to be a suitable candidate for discharge from NGRH and for admission into a personal care home. He was discharged on April 16 with a month's supply of eight medications, including Digoxin for his heart condition. He was transported to Bobbie Moore Community Care Motel, where he stayed until his death on July 31, 1992.

Bobbie Moore, another defendant in this action, maintained two facilities in Fannin County. An employee from NGRH inspected one of the facilities to determine if it would be suitable for Wilkins and was shown a permit to maintain and operate a family personal care home. However, Wilkins was placed in Bobbie Moore's second facility. Although this facility had not been issued an operating permit, it was being operated with the knowledge and permission of the Acting Director of the DHR's Personal Care Home Program, Environmental Health Section. According to him, "[t]his facility was offering all the services that meet the definition of a personal care home" under OCGA § 31-7-12. There were some complaints made by families of

residents of the second facility, but DHR was not made aware of any problems until after Wilkins' death.

Wilkins' brother, who was the administrator of the estate (whom we also refer to as "Wilkins") brought suit for wrongful death under 42 USC §§ 1395dd and 1983, the Georgia Tort Claims Act, and for medical malpractice. The court granted summary judgment to defendants on the two federal claims, which are no longer at issue.

1. Any discussion of sovereign immunity must begin with the relevant provisions of the 1983 Georgia Constitution, as amended in 1991. Art. I, Sec. II, Par. IX (e) provides, "Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver." Paragraph IX (a) explains that "[t]he General Assembly may waive the state's sovereign immunity from suit by enacting a State Tort Claims Act." The legislature did enact such a law, which is codified at OCGA § 50-21-20 et seq.

OCGA § 50-21-23 provides, "(a) The state waives its sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment and shall be liable for such torts in the same manner as a private individual or entity would be liable under like circumstances; provided, however, that the state's sovereign immunity is waived subject to all exceptions and limitations set forth in this article. . . . (b) The state waives its sovereign immunity only to the extent and in the manner provided in this article."

One of these exceptions is found in OCGA § 50-21-24: "The state shall have no liability for losses resulting from: (1) an act or omission by a state officer or employee exercising due care in the execution of a statute, regulation, rule, or ordinance, whether or not such statute, regulation, rule, or ordinance is valid." The trial court determined that whether or not employees of NGRH had exercised due care in discharging Wilkins was a jury question and thus denied defendants' motion for summary judgment on the issue of sovereign immunity.

Subsection (2) of OCGA § 50-21-24 insulates the state from liability for "[t]he exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a state officer or employee, whether or not the discretion involved is abused." OCGA § 50-21-22 prescribes the definition of "discretionary function or duty" as "a function or duty requiring a state officer or employee to exercise his or her policy judgment in choosing among alternate courses of action based upon a consideration of social, political, or economic factors."

A sizable body of case law developed prior to the enactment of the 1991 amendment contrasting the "discretionary" acts of a state employee, for which official immunity applied to protect the employee from personal liability, and "ministerial" acts of an employee, for which the employee was potentially personally liable.[1] The cases held that " '[a] discretionary act . . . calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.' [Cits.]" *Joyce v. Van Arsdale*, 196 Ga. App. 95, 96 (395 SE2d 275) (1990). "[T]he intent of the [1991 constitutional] amendment and the Tort Claims Act enacted under its authority is to redraw and redefine the terms of the State's waiver of sovereign immunity." *Gilbert,* supra, 264 Ga. at 748. Although these cases may provide some guidance, the statutory definition of "discretionary" is narrower than that of the earlier case law, and each alleged tortious act of a state employee must be analyzed in accordance with it. See *Hemak v. Houston County School Dist.*, 220 Ga. App. 110 (469 SE2d 679) (1996); but see *Christensen v. State*, 219 Ga. App. 10, 12 (464 SE2d 14) (1995).

Under paragraph IX (d) of the 1991 constitutional amendment, "all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions," *except as specifically provided by the General Assembly in a State Tort Claims Act.* OCGA § 50-21-25 (a) provides: "[The State Tort Claims Act] constitutes the exclusive remedy for any tort committed by a state officer or employee. A state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor."

The legislative intent of the Tort Claims Act is expressed in OCGA § 50-21-21 (b): "[T]he proper functioning of state government requires that state officers and employees be free to act and to make decisions, in good faith, without fear of thereby exposing themselves to lawsuits and without fear of the loss of their personal assets. Consequently, it is declared to be the public policy of this state that state officers and employees shall not be subject to lawsuit or liability arising from the performance or nonperformance of their official duties or functions." The Supreme Court stated in *Gilbert,* supra at 753, "We

---

[1] For the history of the development of sovereign and official immunity and the distinction between the two, see *Gilbert v. Richardson*, 264 Ga. 744 (452 SE2d 476) (1994).

interpret the term 'official functions' to mean any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts. Under this definition, the 1991 amendment provides no immunity for ministerial acts negligently performed or for ministerial or discretionary acts performed with malice or an intent to injure. It, however, does provide immunity for the negligent performance of discretionary acts, which is consistent with prior law. This interpretation comports with the purpose of providing immunity from personal liability to government employees who work in positions where they make policy or exercise discretion." See also *City of Atlanta v. McKinney*, 265 Ga. 161, 166 (454 SE2d 517) (1995).

*Gilbert* does not address whether OCGA §§ 50-21-21 (b) and 50-21-25 (a) in fact declare that state employees are liable only for torts committed outside the scope of their employment, regardless of the language of subsection (d) of the 1991 amendment, and we decline to do so here, since no individual officer is named in the suit. See OCGA § 50-21-25 (b).

Even under the narrower statutory definition of "discretionary function," the acts of NGRH and DHR fall within its ambit. OCGA § 37-2-1 provides that it is the State's policy that mentally handicapped persons be cared for by the State. OCGA §§ 31-7-12 and 31-7-12.1 define personal care homes and describe licensing procedures. Whether a mental patient is a candidate for discharge from a hospital to a personal care home when the treatment team determines that expensive hospital care is no longer warranted necessarily requires the team, implicitly or explicitly, to weigh possibly competing economic and social policy considerations. Summary judgment on this issue should have been granted to defendants.

2. Wilkins maintains that even if the hospital's actions can be viewed as discretionary under the Tort Claims Act, defendants have failed to prove that they exercised the requisite good faith required under OCGA § 37-3-4, and thus the trial court's determination that this was a jury question should be affirmed. OCGA § 37-3-4 provides that "[a]ny physician, psychologist, peace officer, attorney, or health official, or any hospital official, agent, or other person employed by a private hospital or at a facility operated by the state, by a political subdivision of the state . . . who acts in good faith in compliance with the admission and discharge provisions of this chapter shall be immune from civil or criminal liability for his actions in connection with the admission of a patient to a facility or the discharge of a patient from a facility." But OCGA § 37-3-4 is inapplicable, because the legislative intent, as articulated in OCGA § 50-21-25, supra, is clear. By enacting the Tort Claims Act, the General Assembly eliminated any other avenue for pursuing the state in a tort action. Compare *Roberts*

*v. Grigsby*, 177 Ga. App. 377, 387 (1) (339 SE2d 633) (1985) (Beasley, J., concurring specially).

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

DECIDED MARCH 8, 1996 —

*Michael J. Bowers, Attorney General, William C. Joy, Patricia B. Downing, Senior Assistant Attorneys General, Womack & Rhyne, Ronald R. Womack, for appellants.*

*Coppedge, Goddard & Leman, Joseph T. Leman, Ralston & Painter, David E. Ralston, for appellee.*